86 F.3d 48
 Robert DEFORE and Gaylene Defore, Plaintiffs-Appellants,
v.
Carol PREMORE, individually, and as a Protection Services
Caseworker of the Clinton County Department of Social
Services; Rose Pandozy, as Commissioner of the Clinton
County Department of Social Services; Katherine Tallon,
individually, and as a Child Protective Services Unit
Supervisor of the Clinton County Department of Social
Services; servants and/or employees of the Clinton
County Department of Social Services whose names are
presently unknown, individually, and in their official
capacity as agents, servants and/or employees of Clinton
County Department of Social Services, Defendants-Appellees.
 No. 1237, Docket 94-9121.
 United States Court of Appeals,
Second Circuit.
 Submitted March 28, 1996.
Decided June 13, 1996.
 
 Robert L. Defore, Gaylene R. Defore, Altona, NY, submitted a pro se brief.
 James M. Brooks, Brooks & Meyer, Lake Placid, NY, submitted a brief for defendants-appellees.
 Before: NEWMAN, Chief Judge, OAKES and PARKER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Once again we confront a case in which publicly employed social workers are obliged to make the difficult choice between taking action to protect a child, thereby risking violation of the parents' rights, and declining to act, thereby risking violation of the child's rights. See van Emrik v. Chemung County Dept. of Social Services, 911 F.2d 863 (2d Cir.1990). Robert and Gaylene Defore, parents of Erika Defore, appeal pro se from the October 12, 1994, judgment of the District Court for the Northern District of New York (Howard G. Munson, Judge), directing a verdict for the defendants at the conclusion of a trial of their claim against the Commissioner and two employees of the Clinton County (N.Y.) Department of Social Services ("CCDSS"). Because we conclude that the defendants were entitled to the defense of qualified immunity, we affirm.
 
 Facts
 
 2
 The essential facts are not in dispute. The events leading up to the plaintiffs' lawsuit began with their daughter's allegation to her high school nurse that she had been neglected and physically abused by her parents. After school officials notified state authorities, the matter was relayed to the Child Protective Services Unit of the CCDSS. Defendant Carol Premore, a protective services caseworker, learned from a psychologist at a local mental health clinic that Erika had run away from home and was in what the psychologist described as an "acute crisis situation." Erika told Premore that she had been sexually abused by her father and that her mother was aware of the abuse.
 
 
 3
 Erika's mother signed a Voluntary Placement Agreement ("VPA"), which authorized the CCDSS to take temporary custody of Erika. The VPA also expressed Mrs. Defore's consent "to the administration of such health care, including immunizations, tests, and treatment as are necessary for [Erika's] well-being." Erika's father refused to sign the VPA. Based on the VPA, the defendants placed Erika in foster care. After Erika took an overdose of Tylenol, defendants moved her to a hospital. Premore obtained consent for medical treatment from Erika's mother. After Erika made a second suicide attempt, she was transferred to a psychiatric center.
 
 
 4
 Various legal proceedings ensued in the Clinton County Family Court, the details of which are not pertinent to this appeal. The Family Court determined that Erika should remain in the custody of CCDSS, which she did for three years. Ultimately her parents successfully brought an administrative proceeding, which resulted in the expungement of her records from the New York State Central Register of Child Abuse. Our record does not disclose the current status of her custody.
 
 
 5
 The plaintiffs brought suit against the defendants, alleging a violation of their constitutional rights to parental control by virtue of the administration of medical treatment to which they had not consented. After a five-day trial, Judge Munson ruled that the defendants were entitled to qualified immunity as a matter of law, and he dismissed the complaint.
 
 Discussion
 
 6
 Qualified immunity insulates public officials from claims for damages where their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This case, like van Emrik, illustrates the importance of the defense of qualified immunity to insure that publicly employed caseworkers have adequate latitude to exercise their professional judgment in matters of child welfare. Appellants contend that the defendants should be compelled to pay damages for denying the parents "the constitutional right to seek and follow medical advice, or to give medical consent." Appellants ground this right on language from Parham v. J.R., 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), a decision enunciating procedural due process standards that a state must follow in order not to violate a child's liberty interest in involuntary mental health commitment upon application of the child's parents. In the course of its decision, the Supreme Court referred to parents' " 'high duty' to recognize symptoms of illness and to seek and follow medical advice." Id. at 602, 99 S.Ct. at 2504 (quoting Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925)).
 
 
 7
 However the contours of this parental obligation might ultimately evolve, it is clear that the Supreme Court has not enunciated a parental right that has been violated by any actions of the defendants in this case. The defendants arranged for medical care of Erika only after one of her parents had signed a consent giving the CCDSS temporary custody of Erika, a consent that authorized medical treatment. State law expressly provides that one parent "may give effective consent for medical, dental, health and hospital services for his or her child." N.Y.Pub.Health Law § 2504(2) (McKinney 1993). Ultimately the authority of the CCDSS was confirmed by the Family Court.
 
 
 8
 Moreover, qualified immunity is available as a matter of law when the undisputed facts establish that it was objectively reasonable for the defendants to believe that their actions did not violate clearly established rights. See Robison v. Via, 821 F.2d 913, 921 (2d Cir.1987). In view of the VPA signed by Erika's mother, the child's reports of parental abuse, and her subsequent suicide attempts, the undisputed facts established the reasonableness of the defendants' actions in arranging for her hospitalization.
 
 
 9
 We can well understand the distress of the parents that their child was in the custody of public officials on the basis of their child's allegations that apparently were ultimately determined to be unfounded. But the proper means to challenge such assertions of public authority are by recourse to state courts to test continued public custody, not to seek to hold publicly employed caseworkers liable for damages.
 
 
 10
 In this case, it would have been preferable for the District Judge to have ruled in the defendants' favor at an earlier stage of the proceedings, thereby avoiding altogether the trial that the defendants were obliged to endure. However, it is not clear from the record whether the defendants ever sought to prevail on the issue of qualified immunity by a pretrial motion for summary judgment. In any event, the District Judge properly entered judgment for the defendants as a matter of law at the conclusion of the trial.
 
 
 11
 The judgment of the District Court is affirmed.