**Edward & Kathryn SHATTUCK,
Plaintiffs,**

v.

**TOWN OF STRATFORD,
et al., Defendants.**

**No. CIV.A.3:00–CV–63(CFD).**

United States District Court,
D. Connecticut.

Nov. 13, 2002.

W. Martyn Philpot, Jr., Marc L. Glenn, Law Offices of W. Martyn Philpot, Jr., LLC, New Haven, CT, for Plaintiffs.

Sarah W. Poston, Zeldes, Needle & Cooper, Bridgeport, CT, Jonathan David Berchem, Berchem, Moses & Devlin, PC, Milford, CT, for Town of Stratford and Ronald Blauvelt.

Richard J. Buturla, Warren L. Holcomb, Jonathan David Berchem, Berchem, Moses & Devlin, PC, Milford, CT, for Lisa Biagiarelli and Cathy Bloxsom.

### RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

DRONEY, District Judge.

The plaintiffs, Edward and Kathryn Shattuck, brought this action against the Town of Stratford, Lisa Biagiarelli (the Tax Collector for the Town of Stratford), Cathy Bloxsom (a tax clerk for the Town of Stratford), and Detective Ronald Blauvelt (a police officer for the Town of Stratford) pursuant to 42 U.S.C. § 1983, alleging deprivation of their constitutional rights arising out of their arrests. The plaintiffs also assert various related Connecticut state law causes of action, including intentional infliction of emotional distress, negligent infliction of emotional distress, malicious prosecution, and libel.[1] Pending are the defendants Blauvelt's and Town of Stratford's ("Stratford") Motion for Summary Judgment [Doc. # 41] and defendants Bloxsom's and Biagiarelli's Motion for Summary Judgment [Doc. # 45]. For the following reasons, both motions are GRANTED.

I. *Factual Background*[2]

On May 29, 1997, plaintiff Edward Shat-

---

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1367(a). Personal jurisdiction is not disputed.

2. The following facts are taken from the parties' motion papers and Local Rule 9(c) statements and are undisputed unless indicated.

tuck went to the Stratford tax office to obtain a refund of automobile property taxes previously paid by his fiancee, plaintiff Kathryn Carbone.[3] It was Shattuck's contention that Carbone had overpaid those taxes for Grand List Year 1993. As proof, Shattuck presented a clerk, defendant Cathy Bloxsom, with photocopies of two purported tax releases-one from May 24, 1995, indicating that Carbone had paid her motor vehicle taxes through Grand List Year 1993 and the other, from October 18, 1993, also indicating that Carbone had paid her taxes in full through Grand List Year 1993.[4]

The parties agree that the May 24, 1995 release was genuine.[5] However, Bloxsom and her supervisor, defendant Biagiarelli, were immediately suspicious of the tax release dated October 18, 1993 for three reasons: 1) the taxes for Grand List Year 1993 had not been determined, nor were owing, as of October 18, 1993,[6] 2) a check of the computerized tax records by Bloxsom showed no overpayment by Carbone, and 3) there were apparent "irregularities" on the completed form. Upon request, plaintiff Shattuck subsequently produced the original release. According to Biagiarelli, however, there. were a number of problems with that release: the stamped signature of Biagiarelli on the "original" release did not match either of the two signature stamps used by the tax office and appeared to have been "traced;" the release was not printed on blue paper; it was larger than the standard releases; it

was not customary for the tax office employees to initial the completed form; the handwriting was not that of any tax office employee; and the printing was off-center on front and back. Biagiarelli concluded that the document was a forgery.

After discussing the situation with the Finance Director of the town, Biagiarelli contacted the Stratford police. The complaint was initially investigated by an officer LoSchiavo, who conducted a brief interview with Bloxsom during which she gave her account of the situation with Shattuck. Thereafter, the police investigation was handled by defendant Blauvelt. On June 2, Biagiarelli provided Blauvelt with a memorandum detailing the irregularities that she had observed in the purported October 18, 1993 release. On June 12, Biagiarelli gave Blauvelt a sworn statement which indicated that she had checked the Town's tax records and that no duplicate payments had been made by Carbone, and no motor vehicle taxes were paid on October 18, 1993 by her. On June 13, Biagiarelli gave Blauvelt another sworn statement which essentially restated her previous two statements.

During the course of his investigation, defendant Blauvelt also spoke with Shattuck and Carbone a number of times, but Carbone refused to give any written statement. The plaintiffs also did not provide defendant Blauvelt with any documentation supporting the authenticity of the October 18, 1993 release, such as a bank

---

3. Shattuck and Carbone were married on October 10, 1997 and Kathryn changed her last name to Shattuck. For clarity, this factual recitation will refer to Kathryn Shattuck as Kathryn Carbone.

4. The "releases" were actually on forms that are provided taxpayers by Stratford so that they may be given to the state department of motor vehicles to register automobiles for which delinquent taxes preclude registration.

5. The amount paid on May 24 1995, which is undisputed, was $1,418.21. Apparently, that provided the basis for the threshold amount for larceny in the third degree, as discussed *infra*.

6. Taxes related to the October 1, 1993 Grand List would become due July 1, 1994. *See* Conn. Gen.Stat. § 12–40 *et seq.* The plaintiffs do not dispute this. *See* Def.'s Local R. 9(c)(1) statement [Doc. # 47], ¶¶ 7–8; Pl.'s Local R. 9(c)(2) statement [Doc. # 54], ¶¶ 7–8.

statement or canceled check.[7] The plaintiffs did indicate that they had original tax releases from other Stratford residents which they believed demonstrated that there were not any irregularities with the October 18, 1993 release, but defendant Blauvelt did not ask to view those releases.

Warrants for the arrests of Carbone and Shattuck were issued on June 25, 1997 by a Connecticut Superior Court Judge on state felony charges of attempted forgery in the second degree and attempted larceny in the third degree for Carbone and conspiracy to commit larceny in the third degree for Shattuck, based on Blauvelt's application for the warrants. In September 1998, however, the charges against both the plaintiffs were dismissed.[8]

The plaintiffs' amended complaint asserts five causes of action. Counts One, Two, Three, and Four are asserted against all four of the named defendants: Bloxsom, Biagiarelli, Blauvelt, and the Town of Stratford. Count One alleges that the defendants deprived the plaintiffs of their rights to be free from false arrest and malicious prosecution secured by the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. Counts Two, Three, and Four assert state law claims of intentional infliction of emotional distress, negligent infliction of emotional distress, and malicious prosecution. Count Five, asserting a state law claim for libel, is only asserted against defendants Biagiarelli, Bloxsom, and Blauvelt. The plaintiffs seek compensatory and punitive damages as well as attorney's fees and costs.

The defendants have moved for summary judgment as to all counts on a number of bases, including qualified immunity for the individual defendants on the § 1983 claims.

## II. *Summary Judgment Standard*

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.' " *Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

---

7. They maintained that the October 18, 1993 payment was made in cash.

8. The record does not indicate the reason for the dismissals.

III. *Count One: Claims under 42 U.S.C. § 1983*

Section 1983 provides that any person who, acting under color of law, "subjects or causes to be subjected, any Citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws" of the United States shall be liable to the injured party in actions at law. 42 U.S.C. § 1983. The plaintiffs allege that all the named defendants have acted to deprive them of their constitutional rights under § 1983. However, the plaintiffs' theories for § 1983 liability are not clear in one respect. The plaintiffs clearly assert that their constitutional rights to be free from false arrest and malicious prosecution, derived from the Fourth Amendment, were violated. *See Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir.2002) ("§ 1983 claim for false arrest derives from an individual's right to remain free from unreasonable seizures."); *Fulton v. Robinson,* 289 F.3d 188, 195 (2d Cir.2002) ("[T]o prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment."). More confusing, however, is the plaintiffs' contention that their arrests constituted a "denial of due process of law." The Court interprets the plaintiffs' invocation of "due process" as an acknowledgment that the Fourth Amendment rights they assert, to be free from unlawful arrest and malicious prosecution, are applied to the states through the Due Process clause of the Fourteenth Amendment, and not a separate and additional constitutional claim. *See Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (false arrest claim under § 1983 to be judged under Fourth Amendment and not under Fourteenth Amendment substantive due process).

Accordingly, the constitutional false arrest and malicious prosecution claims will be addressed as to each defendant.[9]

A. *Defendant Blauvelt*

▮ The plaintiffs claim that the arrests made by defendant Blauvelt constituted false arrests and malicious prosecution in violation of the Fourth Amendment. "A false arrest by a state actor implicates a person's Fourth Amendment rights and may raise a cognizable claim under § 1983." *See Cook v. Sheldon,* 41 F.3d 73, 77 (2d Cir.1994). "A § 1983 false arrest claim requires the plaintiff to establish that (1) the defendant intentionally arrested him or had him arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause." *See Arum v. Miller,* 193 F.Supp.2d 572, 585 (E.D.N.Y.2002) (citing *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995); *United States v. Ceballos,* 812 F.2d 42, 50 (2d Cir.1987)). Further, "[i]n order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment ... and establish the elements of a malicious prosecution under state law." *Fulton v. Robinson,* 289 F.3d 188 (2d Cir.2002) (internal citations omitted). Under Connecticut state law, to establish malicious prosecution, the plaintiff must demonstrate that the "initiation or procurement of the initiation of criminal prosecution with malice for a purpose other than bringing an offender to justice; that the defendant acted without probable cause, and the criminal proceedings terminated in favor of the plaintiff." *Clark v. Town of Greenwich,*

---

**9.** The parties do not dispute that defendants Blauvelt, Bloxsom, and Biagiarelli were act-

ing at all times under color of state law.

No. CV00177986, 2002 WL 237854, at *3 (Conn.Super.Jan.24, 2002); *see also QSP, Inc. v. Aetna Casualty and Surety Co.,* 256 Conn. 343, 361, 773 A.2d 906 (2001) (holding that in malicious prosecution or vexatious litigation suit "it is necessary to prove want of probable cause, malice and a termination of [the] suit in the plaintiffs' favor") (citations and internal quotation marks omitted).[10] Hence, if probable cause existed for the arrest, the plaintiffs cannot satisfy the elements of either a false arrest claim or a malicious prosecution claim under § 1983. "The threshold issue for the Court is whether, on the facts alleged, [the plaintiff's] right to be free from arrest without probable cause was violated. This question is primary both for a § 1983 false arrest or malicious prosecution analysis . . . [because] the existence of probable cause is a complete defense to a civil rights claim alleging false arrest or malicious prosecution." *Garcia v. Gasparri,* 193 F.Supp.2d 445, 449 (D.Conn.2002) (citing *Curley v. Village of Suffern,* 268 F.3d 65, 69–70 (2d Cir.2001)).

Defendant Blauvelt asserts that he is entitled to qualified immunity from liability for these claims. The law of qualified immunity is well settled in the Second Circuit:

> Qualified immunity shields government officials from liability for civil damages as a result of their performance of dis-cretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial lawsuits. Government actors performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act. The objective reasonableness test is met-and the defendant is entitled to qualified immunity-if officers of reasonable competence could disagree on the legality of the defendant's actions.

*Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (citations and internal quotation marks omitted). The *Lennon* Court "recogniz[ed] the apparent anomaly of holding that summary judgment is appropriate when a trier of fact would find that reasonable officers could disagree." *Id.* at 421. However, the Court reasoned, "in qualified immunity cases, we are not concerned with the correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action." *Id.* Indeed,

---

**10.** "In order to allege a cause of action for malicious prosecution under § 1983, [a plaintiff] must assert, in addition to the elements of *malicious prosecution under state law, that there was . . . a sufficient post-arraignment liberty restraint to implicate the plaintiff's fourth amendment rights.*" *Rohman v. New York City Transit Auth.,* 215 F.3d 208, 215 (2d Cir.2000) (citing *Murphy v. Lynn,* 118 F.3d 938, 944–46 (2d Cir.1997)). *"The fourth amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person-i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty. A plaintiff* asserting a fourth amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure.' " *Id.* (quoting *Singer,* 63 F.3d at 116, and citing *Murphy,* 118 F.3d at 944). "[S]ince the gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 [also] must show that the seizure resulted from the initiation or pendency of judicial proceedings." *Id.* (citation omitted). *The Court need not address whether the plaintiffs have satisfied this element, however, in light of its finding infra as to probable cause.*

because one of the purposes of qualified immunity is to prevent "fear of personal monetary liability and harassing litigation" from interfering with government officials' duties, "the identification and disposal of insubstantial claims by summary judgment is encouraged." *Lee v. Sandberg,* 136 F.3d 94, 101–02 (2d Cir.1997) (quoting *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (internal quotation marks omitted); *see also Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (the qualified immunity entitlement is an *"immunity from suit* rather than a mere defense to liability . . . [it] is effectively lost if a case is erroneously permitted to go to trial.").

As to the first part of the analysis-determining whether a particular right was "clearly established" for purposes of assessing a claim of qualified immunity-the Second Circuit has instructed the district courts to consider three factors:

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991). Here, there is no question that the plaintiff had a constitutional right to not be arrested without probable cause and that the relevant case law is well established on this point. *See Caldarola,* 298 F.3d at 161 ("There is no dispute that this broad right to be free of arrest without probable cause [is] clearly established") (quoting *Lee v. Sandberg,* 136 F.3d 94, 102 (2d Cir.1997)); *Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 128 (2d Cir.1997) (right not to be arrested without probable cause is clearly established); *Oliveira v. Mayer,* 23 F.3d 642, 648 (2d Cir.1994) (same). The part of the qualified immunity analysis as to officer Blauvelt which requires more attention, then, is whether reasonable police officers in his situation would have understood the arrest of the plaintiffs to be unlawful. The Second Circuit has repeatedly held that:

> A police officer is entitled to qualified immunity shielding him or her from a claim for damages for false arrest where (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest.

*Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 128 (2d Cir.1997) (citing *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991)).

### Probable Cause Based on a Warrant

Qualified immunity for Blauvelt must also be analyzed in the context of the arrests of the plaintiffs following warrants issued by the Connecticut Superior Court Judge. In *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the U.S. Supreme Court held that police officers may be entitled to qualified immunity for arrests based on warrants issued by a judge or magistrate. The Court explained that the issue is "whether a reasonably-trained officer in [the defendants'] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley,* 475 U.S. at 345, 106 S.Ct. 1092. It concluded that the officer "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer could have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* at 341, 106 S.Ct. 1092. The Second Circuit has expanded on *Malley* by stating:

> A police officer who relies in good faith on a warrant issued by a neutral and

detached magistrate upon a finding of probable cause is presumptively shielded by qualified immunity from personal liability for damages. *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991). Police activity conducted pursuant to a warrant rarely will require any deep inquiry into reasonableness because a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith. *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). However, "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." *Id.* The court's inquiry into reasonableness is limited to determining whether a reasonably well-trained officer would have known that the warrants were illegal despite the magistrate's authorization. *Id.* at 922 n. 23, 104 S.Ct. 3405.

*Simms v. Village of Albion, New York,* 115 F.3d 1098, 1106 (2d Cir.1997).

Thus, the issuance of warrants for the plaintiffs' arrests for forgery and larceny creates a presumption that it was objectively reasonable for Blauvelt to believe that there was probable cause to support them.[11] *See Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991), *cert. denied,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). The Court must next examine whether the plaintiff has produced evidence to overcome this presumption such that a reasonable juror could conclude that Blauvelt's reliance on the judge's probable cause determination and on the technical sufficiency of the warrants was objectively unreasonable. *Id.* As indicated by the Second Circuit, this inquiry involves an examination of whether a reasonably well-trained officer would have known that the warrants were illegal despite the judge's authorization.

■ Here, the plaintiffs have put forth no material evidence from which a reasonable juror could conclude that Blauvelt knew or should have known that the warrants lacked probable cause.[12] It is undis-

---

11. Carbone was charged with attempt to commit forgery in the second degree in violation of Conn. Gen.Stat. §§ 53a–49 and 53a–139 and attempt to commit larceny in the third degree in violation of Conn. Gen.Stat. §§ 53a–49 and 53a–124. Shattuck was charged with conspiracy to commit larceny in the third degree in violation of Conn. Gen.Stat. §§ 53a–48 and 53a–124.

Conn. Gen.Stat. 53a–139 provides, in relevant part, that a person is guilty of forgery in the second degree if "he falsely makes, completes or alters a written instrument ... which is or purports to be, or which is calculated to become or represent if completed ... (2) a public record or an instrument filed or required or authorized by law to be filed in or with a public office or a public servant."

Conn. Gen.Stat. 53a–124 provides, in relevant part, that a person is guilty of larceny in the third degree when he commits larceny under 53a–119 and "(2) the value of the property ... exceeds one thousand dollars ...." 53a–119 defines larceny as a wrongfully taking, obtaining or withholding another's prop-

erty with the intent to deprive the owner of that property or to appropriate the same to himself or a third party.

The attempt statute, Conn. Gen.Stat. § 53a–49, provides in relevant part that "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: ... (2) intentionally does or omits to do anything which ... is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

The conspiracy statute, Conn. Gen.Stat. 53a–48, provides in relevant part "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

12. In assessing the reasonableness of Blauvelt's determination that there was probable

puted that Blauvelt had three statements-two of them under oath-from Biagiarelli, the Tax Collector for the Town of Stratford, detailing the irregularities of the purported October 18, 1993 release, the results of her search of the Stratford tax records, and the fact that an October 1993 tax payment would not have been possible for the 1993 Grand List. Also, it was reasonable for Blauvelt to rely on Biagiarelli's information. When an anonymous informant provides information, that informant's reliability and veracity must be carefully scrutinized. *See Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir.2002); *see also Florida v. J.L.,* 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000); so, too, with government informants such as a "cooperating witness." *See Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). However, "if an unquestionably honest citizen comes forward with a report of criminal activity-which if fabricated would subject him to criminal liability ... rigorous scrutiny of the basis of his knowledge [is] unnecessary." *Gates,* 462 U.S. at 233–34, 103 S.Ct. 2317.

The Second Circuit recently reviewed the standard for applying qualified immunity in § 1983 false arrest claims when the arresting officer relies on information obtained from third parties in *Caldarola v. Calabrese,* 298 F.3d 156 (2d Cir.2002). In *Caldarola,* the defendant police officer had arrested the plaintiff based on information gathered by two private investigation firms. In declining to grant summary judgment on the basis of qualified immunity, the district court did not reach the question of whether the information provided by the private investigation firms constituted probable cause for an arrest because there were no facts in the record indicating the reliability and veracity of the private firms. The Second Circuit reversed, however, reasoning that in situations where an informant is identified or identifiable, thus subjecting him or her to later accountability for any misinformation then "the concerns outlined in *Aguilar* and *Spinelli* [regarding the veracity of 'professional' criminal informants] ... are at the very least reduced ..." 298 F.3d at 167. Rather, the Court concluded, "when an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that might not be the case." *Id.* at 165 (quoting *United States v. Fooladi,* 703 F.2d 180, 183 (5th Cir.1983)) (internal quotation marks omitted). Here, Biagiarelli's information was entitled to even more credibility because the information was provided under oath, thus subjecting her to the penalties of perjury. *See Gates,* 462 U.S. at 233, 103 S.Ct. 2317 (weight to be given if fabrication would subject informant to criminal liability). Other factors also increased the reliability of Biagiarelli's information. For example, she was a public official, the information provided was within the scope of her duties, and it was corroborated by the town tax records. In particular, there was no record of the October 18, 1993 payment by Carbone and such bills would not have been issued until the summer of 1994, based on the October 1, 1993 Grand List.

In addition to Biagiarelli's sworn statements, Blauvelt had the opportunity to review the release itself, which on its face

cause, it should be noted, as the Second Circuit observed in a recent decision regarding the application of qualified immunity, that "probable cause is an assessment of probabilities, not an ascertainment of truths." *Loria v. Gorman,* 306 F.3d 1271, 1288–89 (2d Cir. 2002).

contained suspicious indicia. These factors also bolster the objective reasonableness of Blauvelt's assessment that there was probable cause for the plaintiffs' arrests.

The plaintiffs argue that Blauvelt's reliance on Biagiarelli's information was unreasonable because of his failure to view the other tax releases in their possession. However, the plaintiffs concede that Blauvelt gave each of them more than one opportunity to provide him with their version of events. They also concede that they had the opportunity to provide exculpatory evidence to Blauvelt in the form of canceled checks or bank statements-evidence which they did not produce. Nevertheless, the plaintiffs allege that by failing to view the other tax releases in their possession defendant Blauvelt failed to fulfill his duty to investigate carefully.[13]

Blauvelt's refusal to consider the other tax releases [14] does not negate the reasonableness of his determination that probable cause existed for their arrests. The Second Circuit in *Caldarola* noted in response to a similar argument by the plaintiff in that case that the defendant "was not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Id.* at 167–68 (quoting *Ricciuti*, 124 F.3d at 128)(internal quotation marks omitted).[15] Similarly, in *Krause v. Bennett*, 887 F.2d 362 (2d Cir.1989), the Second Circuit found that an investigating officer was entitled to

qualified immunity notwithstanding that he had failed to consider possibly exculpatory evidence offered by the plaintiff. In *Krause*, the defendant police officer arrested the plaintiff for possession of stolen property after observing a stop sign in the plaintiff's garage. *See Krause*, 887 F.2d at 365–66. The plaintiff maintained that he had no knowledge of its prior theft, and that the sign had been obtained from a friend. *See id.* at 365. The plaintiff gave the officer the friend's phone number, but the officer did not call the friend. *See id.* Nevertheless, the Court held that the failure to call did not so taint the investigation as to make unreasonable the officer's conclusion that probable cause existed. The Court reasoned that:

> It is immaterial that a more thorough investigation by [the police officer] might have revealed that [the plaintiff's friend] really did find the sign in his house when he moved into it. . . . It bears repeating that probable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful. It is therefore of no consequence that a more thorough or more probing investigation might have cast doubt upon the situation.

*Id.* at 371 (citations and internal quotation marks omitted). Here, as in *Caldarola* and *Krause*, the fact that a further investigation might have included consideration of other releases does not negate Blau-

---

13. The plaintiffs apparently believe that if defendant Blauvelt had considered these other releases, he would have come to the conclusion that most of the "irregularities" identified by defendant Biagiarelli were not actually indicia of forgery, but rather were common to many other tax releases issued by the Tax Collector's office. See the discussion of the specific "irregularities" in the release, *infra*, however.

14. Blauvelt acknowledges that Shattuck claimed he had other tax releases and that "I

never asked him to bring them in and he never brought them in." Opposition to Defendants' Ronald Blauvelt and Town of Stratford Motion for Summary Judgment [Doc. # 52], Ex. J, at 94.

15. Notably, the defendant in *Caldarola*, unlike Blauvelt here, was not acting pursuant to an arrest warrant, see *Caldarola*, 298 F.3d 156, and thus was not entitled to the presumption that he had probable cause to make an arrest.

312

velt's objectively reasonable determination that there was probable cause for the plaintiffs' arrests based on the information provided by Biagiarelli.

■ Challenges to the probable cause presumption afforded by a warrant can also be made pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In the criminal context, a defendant can overcome the presumption of probable cause afforded by a warrant under *Franks* by demonstrating that 1) the defendant either intentionally or with reckless disregard for the truth made a false statement in his warrant application and 2) the neutral magistrate would not have issued the warrant but for the false statement. *See Franks,* 438 U.S. at 155–56, 98 S.Ct. 2674. This *Franks* analysis has been applied to civil cases involving a challenge to the presumption of qualified immunity afforded by a warrant. *See, e.g., Magnotti v. Kuntz,* 918 F.2d 364, 368 (2d Cir.1990); *Willocks v. Dodenhoff,* 110 F.R.D. 652, 655–59 (D.Conn.1986).

The only claims here that could be construed as a *Franks* challenge against Blauvelt are his reliance on the information received from Biagiarelli and his failure to set forth in his warrant application[16] that the plaintiffs had offered to show him the similar releases. As to the former, the plaintiffs claim that

> [a] reasonable jury could find from the facts of this case that the false statement (that the plaintiffs had forged defendant Biagiarelli's signature) made by defendant Biagiarelli was included in the warrant affidavit, that the false statement was made with reckless disregard for its truth, that the false statement was relevant to the issue of probable

cause (for the charge of forgery); and that a judge would not have issued the warrant based on a corrected affidavit (i.e., without the false statement).

Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. [Doc. # 55], at 10.

■ "To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding." *United States v. Canfield,* 212 F.3d 713, 717–18 (2d Cir.2000) (citations and internal quotation marks omitted). Thus, the plaintiffs' claim that material misrepresentations were made by Biagiarelli does not undermine the objective reasonableness of Blauvelt's reliance on the warrants, absent a showing that he knew of or recklessly disregarded the falsity of those statements. Even if the reliability of Biagiarelli's information were to be challenged, however, there were sufficient indicia of its reliability in Blauvelt's incident report. For example, the report set forth the following: 1) that taxes for the 1993 Grand List could not have been paid as early as October of 1993, 2) that the Stratford tax records showed no payment in October 1993 and 3) the specific suspicious aspects of the October 1993 release were apparent on its face. As to the claimed misrepresentations by Biagiarelli regarding the "irregularities" of the release, even if the plaintiffs' points are conceded, those alleged "falsehoods" were not necessary to a finding of probable cause. The plaintiffs claim the follow-

16. The affidavit of Blauvelt that was submitted with the warrant application apparently no longer exists. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. [Doc. # 42], at 11 fn. 3. The plaintiffs do not dispute, however, that the information provided in the affidavit mirrors the incident report of Blauvelt set forth at Ex. 1 to the Affidavit of Ronald Blauvelt in support of his Motion for Summary Judgment [Doc. # 44].

ing: blue paper had not always been used for the releases; some releases were initialed by tax office personnel, like the October 18, 1993 release (notwithstanding Biagiarelli's statement that tax office employees' initials were never entered on releases); and imperfectly completed releases were not always redone, as Biagiarelli contends. *See* Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. [Doc. # 55], at 2–3.[17] However, even those modifications in the warrant application would not have changed the conclusion that probable cause for their arrests was still present. As to omitting from the warrant application the offer by the plaintiffs to show the other releases, that also would not have changed the conclusion of probable cause. In other words, even if Blauvelt had made these changes and included that information in his warrant application, there is no question that probable cause would still have been satisfied. *See Velardi v. Walsh,* 40 F.3d 569, 573–74 (2d Cir.1994). The other indicia of forgery that are undisputed-the apparent tracing of Biagiarelli's signature, the off-center printing front and back, the "cutting off" of her signature, the larger size of the October 18, 1993 release, and the unfamiliar handwriting-as well as the tax record information, more than satisfied probable cause for the plaintiffs' arrests. Because, under *Malley* and *Golino,* a reasonable officer in Blauvelt's position could rely on the magistrate's determination that there was probable cause for the plaintiffs' arrests, Blauvelt is entitled to qualified immunity.[18]

For the forgoing reasons, the defendants' Motion For Summary Judgment [Doc. # 41] is GRANTED as to Count One of the amended complaint as it applies to defendant Blauvelt.

### B. *Defendant Biagiarelli*

The plaintiffs' § 1983 claims for false arrest and malicious prosecution against Biagiarelli are somewhat unusual, in that, unlike most malicious prosecution and false arrest claims, they are asserted against a defendant who was not an arresting officer. Claims for § 1983 false arrest and malicious prosecution can be brought against individuals other than the arresting officer, however.

■■■■■ Ordinarily, a person providing information to the police is shielded from liability on a false arrest or malicious prosecution claim by the arresting officer's independent decision to make an arrest. *See Dickerson v. Monroe County Sheriff's Dep't,* 114 F.Supp.2d 187, 191 (W.D.N.Y. 2000) ("It is true that civilians who merely report a crime are generally shielded from liability for the tort of malicious prosecution."). However, there are situations where those reporting criminal activity to the authorities may be liable under these constitutional torts. *See e.g., Lopez v. City of New York,* 901 F.Supp. 684, 688–89 (S.D.N.Y.1995) (holding that individual other than arresting officer may be liable for false arrest and malicious prosecution if the individual "instigated" the arrest or "commenc[ed]" the proceedings). For example, in *Fowler v. Robinson,* No. 94–CV–

17. In their Local Rule 9(c)2 statement, the plaintiffs also deny that Biagiarelli knew the handwriting of her employees and that the signature of Biagiarelli was traced, but presented no evidence as to these points. *See* Pl.'s Loc. R. 9(c)(2) Statement [Doc. # 54].

18. This qualified immunity analysis in the context of considering summary judgment is also subject to the requirement that the material facts upon which qualified immunity is based be undisputed. *See Cartier v. Lussier,* 955 F.2d 841, 844–45 (2d Cir.1992). Here, there are no genuine disputes as to these material facts which constituted sufficient probable cause for Blauvelt to seek the arrest warrants.

836, 1996 WL 67994 (N.D.N.Y. Feb.15, 1996), the district court for the Northern District of New York denied a motion for summary judgment on the plaintiffs' claims of § 1983 malicious prosecution and false arrest by two defendant social workers. The social workers' written statements were the primary basis for the probable cause determination made by the arresting police officer. After reciting the elements of a false arrest claim, see Part III.A., *supra*, the court observed:

> [The defendants] explain that although [they] reported a possible incidence of child abuse at the police station and signed supporting depositions, Investigator Bliss of the New York State Police actually arrested [the plaintiff]-by serving an appearance ticket-and only after he came to an independent determination.... Plaintiffs are correct to respond that, absent probable cause to support an arrest, someone who requests or insists that a police officer or agency arrest another person, as opposed to making a statement and leaving it to the officer to decide, is liable to the arrestee for false arrest or false imprisonment.

*Id.* at *5. The court concluded that there was a genuine issue of material fact as to whether the defendant social workers had "instigated" the arrest by requesting or insisting that the investigating officer make an arrest, thus subjecting them to potential liability for false arrest or malicious prosecution under § 1983. *Id.* at *5. *See also White v. Frank*, 855 F.2d 956, 958 (2d Cir.1988) ("The common law made a subtle but crucial distinction between two categories of witnesses with respect to their immunity from false testimony. Those whose role was limited to providing testimony enjoyed immunity; those who played a role in initiating a prosecution-the complaining witness-did not enjoy immunity.") Thus, Biagiarelli could be liable here for § 1983 malicious prosecution and false

arrest, even though she did not apply for the arrest warrants, if the plaintiffs could show that she had "initiated" or "instigated" the proceedings against them by contacting the police and then encouraging their prosecution. Based on the record, there is at least a genuine issue of material fact as to whether Biagiarelli initiated or instigated the proceedings against the plaintiffs; a reasonable juror could conclude that Biagiarelli encouraged Blauvelt to seek arrest warrants. However, Biagiarelli is still entitled to qualified immunity, as discussed below.

*Qualified Immunity*

Biagiarelli is entitled to qualified immunity from the plaintiffs' claims of false arrest and malicious prosecution under § 1983 because it was objectively reasonable for her to believe that she was not violating the plaintiffs' Fourth Amendment rights by contacting the police about the October 18, 1993 release and pursuing the investigation. In other words, it was objectively reasonable, based on the undisputed material facts, for Biagiarelli to believe that the release was not genuine and thus the plaintiffs were attempting to commit forgery and larceny. *See Tenenbaum v. Williams*, 193 F.3d 581, 596 (2d Cir. 1999) (noting that there is "substantial protection for caseworkers" under qualified immunity "so long as it is objectively reasonable" for them to believe they have not violated the plaintiff's constitutional rights); *Schwimmer v. Kaladjian*, 164 F.3d 619, 1998 WL 708818, at *2 (2d Cir. 1998) (holding that New York City Child Welfare Administration employee was entitled to qualified immunity for decision to remove a child from home when employee had "sufficient information for an objectively reasonable person to conclude that an emergency situation existed") (unpublished opinion); *Defore v. Premore*, 86 F.3d 48, 50 (2d Cir.1996) (holding that Department of Social Services workers

were entitled to qualified immunity "when the undisputed facts establish that it was objectively reasonable for the defendants to believe that their action did not violate clearly established rights."); *van Emrik v. Chemung County Dep't of Soc. Servs.*, 911 F.2d 863, 865–66 (2d Cir.1990) (holding that social service caseworkers "enjoy qualified immunity from liability for damages ... if it was objectively reasonable for them to believe that their actions did not violate" clearly established constitutional rights). In their response to defendant Biagiarelli's Motion for Summary Judgment, however, the plaintiffs contend that there is a genuine issue of material fact as to whether the specific characteristics of the October 1993 release were actually "irregularities" giving rise to a reasonable inference that it was a forgery. *See* Pl.'s Loc. R. 9(c)(2) Statement [Doc. # 54], at ¶ 20. Specifically, as set forth in the discussion above concerning Blauvelt, they assert that there are genuine issues of fact as to whether the Stratford Tax Office always used blue paper for their releases during the period in question, *Id.* at ¶ 2, whether it was the policy of the Stratford Tax Office not to have clerks initial releases, *Id.* at ¶ 4, and whether it was the policy of the Stratford Tax Office to discard any releases with off-center printing or partially missing, faint, or smudged signatures. *Id.* at ¶ 5. In support of these contentions, the plaintiffs have submitted two releases issued during Biagiarelli's tenure. *See* Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. [Doc. # 55], Ex. C and D. The plaintiffs also contend that there is a genuine issue of material fact as to whether defendant Biagiarelli searched the appro-

priate tax records before she called the police.

Even assuming, as is proper in the summary judgment context where all inferences are drawn in favor of the non-moving party, see *Aldrich*, 963 F.2d at 523 (holding that in summary judgment context courts must "draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide"), that there are genuine factual issues as to these three claimed "irregularities" in the October 1993 release as asserted by the plaintiffs, they have failed to demonstrate a genuine issue of material fact with regard to some of the other "irregularities" in the October 18, 1993 tax release. For example, neither of the two genuine releases presented by the plaintiffs or the May 24, 1995 release have what appears to be a "traced" signature of Biagiarelli, they are not missing the final letter of her professional designation ("CCMC") in her stamped signature, they are not printed off-center, and only one has initials by a clerk (and it appears to relate to an expiration date).[19] Also, as discussed in the section concerning Blauvelt, there was no evidentiary challenge to certain of the "irregularities" spotted by Biagiarelli in the purported October 18, 1993 release: its larger size and the unfamiliar handwriting. Even more important, the plaintiffs have presented no evidence to contradict the evidence presented by Biagiarelli that 1) the taxes for the 1993 Grand List could not have been paid in October 1993 because they would not have been set and due until the following July and 2) the tax records of Stratford showed no payment by Carbone in October 1993.[20]

---

**19.** The plaintiffs have also presented copies of purported releases issued prior to Biagiarelli's tenure, but they also do not alter this analysis or its conclusion.

**20.** The plaintiffs claim that Biagiarelli's review of Stratford's tax records was deficient because it did not include a review of the

"rate book" which sets forth the amount of tax initially set for the 1993 Grand List. However, this is not material because it is undisputed that the rate book only shows that amount *set* for the tax, not whether it was ever *paid*. In addition, there has been no evidence presented by the plaintiffs that Blox-

Also, even if it is true that Biagiarelli had not searched the tax records before first calling the police, there is no genuine issue of material fact that she· did so before Blauvelt first applied for the warrant; she had, by then, provided him with two sworn affidavits attesting to the state of the tax records. Finally, the plaintiffs have not presented any evidence to contradict that the Stratford records showed no duplicate payment or that one could not pay on the October 1, 1993 Grand List until after July 1, 1994.

In any event, the plaintiffs' assertion that a reasonable jury *could* find that Biagiarelli's action in notifying the police of the "forgery" was objectively unreasonable, even if true, is not enough to survive summary judgment in the context of qualified immunity. In *Cerrone v. Brown*, 246 F.3d 194 (2d Cir.2001), the Second Circuit vacated and remanded a district court decision that had denied summary judgment to the defendant police officers on the basis that "an issue of fact existed as to whether defendants' actions were 'objectively reasonable' under the circumstances." 246 F.3d at 198. The Court stated that

> [i]n holding that there remained material issues in dispute with respect to whether appellants' conduct was objectively reasonable, the district court relied upon language specifically disavowed by the Supreme Court in *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). The district court stated " 'that whether a reasonable officer could have believed he had probable cause is a question for the trier of fact, and summary judgment or a directed verdict in a § 1983 action based on lack of probable cause is proper only if there is only one reasonable conclusion a jury could reach.' " *Cerrone*, 84 F.Supp.2d at 340 (quoting *Hunter*, 502

U.S. at 233, 112 S.Ct. 534 (Stevens, J. dissenting)). *But see id.* at 228, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (per curiam) (expressly rejecting the dissent's characterization). The district court ultimately found that because material facts were in dispute, a "reasonable finder of fact could reach more than one conclusion." *Cerrone*, 84 F.Supp.2d at 334.

> As both this Circuit and the Supreme Court have repeatedly stated, the court must grant police officers qualified immunity when the court concludes that the only conclusion a reasonable jury could reach is that reasonable officers would disagree on the constitutionality of the seizure.

*Cerrone*, 246 F.3d at 203.

Here, this Court finds that the only conclusion a reasonable jury could reach is that reasonable officials in defendant Biagiarelli's position could-at best for the plaintiffs-disagree on the reasonableness of her decision to notify the police of the suspected forgery, but more likely agree that it was reasonable. Thus, summary judgment is appropriate.

For the forgoing reasons, the defendants' Motion to For Summary Judgment [Doc. # 45] is GRANTED as to Count One of the amended complaint as it applies to defendant Biagiarelli.

### C. *Defendant Bloxsom*

The plaintiffs identify only two acts performed by Bloxsom that could conceivably result in liability pursuant to § 1983 for false arrest and malicious prosecution: Bloxsom's raising a concern about the authenticity of the release to her supervisor (defendant Biagiarelli) on Shattuck's first visit to the office, and her subsequently answering the questions of the investigat-

---

som and Biagiarelli's review of the payment records was deficient.

ing police officers. However, neither of these actions rise to the level of "initiating" or "instigating" the proceedings against the plaintiffs and, even if they did, Bloxsom is protected by qualified immunity. Each of these considerations are discussed below.

Bloxsom's actions in contacting Biagiarelli regarding her suspicions and in answering questions posed by the police are not sufficient to establish a genuine issue of material fact as to whether she "initiated" or "instigated" the proceedings against the plaintiffs thereby subjecting her to claims for false arrest or malicious prosecution under § 1983. *See* Part III. B., *supra*. Here, the plaintiffs have offered no evidence, nor have they even asserted, that Bloxsom initiated or instigated the police investigation against them. Rather, the plaintiffs concede that the decision to involve the police was that of Biagiarelli.[21] Further, the plaintiffs do not contend that Blauvelt's decision to apply for a warrant was based on information provided by Bloxsom. In their Memorandum in Opposition to Defendant's Motion for Summary Judgment [Doc. # 55], at 5, the plaintiffs state that "[t]he arrest of the plaintiffs was based solely on the word of defendant Biagiarelli."[22] Because they have not offered any evidence tending to show that Bloxsom initiated any proceedings against them, the plaintiffs have failed to establish that Bloxsom is liable for either false arrest or malicious prosecution under § 1983.

Even if that element had been met, however, reporting her suspicions about the October 18, 1993 release to her supervisor following the check of the computerized tax records of Stratford and answering the police officers' questions were objectively reasonable actions for which Bloxsom is entitled to qualified immunity. As noted above, one of the purported rationales of qualified immunity is to prevent "fear of personal monetary liability and harassing litigation" from interfering with government officials' duties. *See Lee v. Sandberg*, 136 F.3d 94, 101 (2d Cir.1997). Since it was one of Bloxsom's duties as a tax clerk to verify the authenticity of tax releases, the doctrine of qualified immunity operates to protect her from suit when reporting on any perceived irregularities in a release, provided that such reporting is objectively reasonable. Here there were enough irregularities to make Bloxsom's reporting of her suspicions to Biagiarelli reasonable, especially after she checked the tax records. *See* Part III.B., *supra*. Therefore, Bloxsom's initial statement to Biagiarelli regarding her suspicions about the release were protected by qualified immunity inasmuch as a reasonably prudent tax clerk in Bloxsom's position would not have believed her actions to constitute a deprivation of the plaintiffs' constitutional rights. So too with answering the questions of the investigating officers.

For the forgoing reasons, the defendants' Motion to For Summary Judgment [Doc. # 45] is GRANTED as to Count One

---

21. Biagiarelli, however, contends that her supervisor suggested that she call the police. Regardless whether Biagiarelli did decide to call the police, or did so at the urging of her supervisor, there is no genuine issue of material fact as to Bloxsom's role in making the decision.

22. This phrase is repeated in the memorandum at page 10. Similarly, in the plaintiffs'

Memorandum of Law in Support of their Opposition to Defendants' Ronald Blauvelt and Town of Stratford Motion for Summary Judgment [Doc. # 52], at 7, the plaintiffs claim that "Detective Blauvelt sought no corroborating evidence or witnesses other than the word of co-defendant Lisa Biagiarelli" and "The record is uncontroverted that Blauvelt reached probable cause solely on the conclusions of Biagiarelli."

of the amended complaint as it applies to defendant Bloxsom.

### D.  *Town of Stratford*

The plaintiffs assert in their amended complaint that the defendant Town of Stratford "through the co-defendants" acted to deprive them of their constitutional rights in violation of § 1983. However, it is well-settled that § 1983 does not permit suits against municipalities based on respondeat superior. *See, e.g., Monell v. Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[W]e conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."); *Thomas v. Roach,* 165 F.3d 137, 145 (2d Cir.1999) ("Such liability cannot result from a theory of respondeat superior; rather, it can be imposed only if the acts in question were carried out in the execution of a government's policy or custom."). Rather, a municipality can only be held liable under § 1983 if the alleged constitutional deprivation was made pursuant to some policy or custom of the municipality. *Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018.

In *Monell,* the Court acknowledged that by using the word "persons" in the text of the statute Congress intended to include municipalities among those subject to liability under § 1983. *Id.* at 690, 98 S.Ct. 2018. However, the Court reasoned that "[t]he language of § 1983 ... compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691, 98 S.Ct. 2018.[23] Here, the plaintiffs have not alleged, nor submitted any evidence of, a municipal pol-

icy or custom that operated to deprive them of a constitutional right. As § 1983 does not permit suits against municipalities for the constitutional torts of their employees without evidence of a policy or custom that caused the deprivation, the plaintiffs' § 1983 claim against the Town of Stratford also fails.

For the forgoing reasons, the defendants' Motion to For Summary Judgment [Doc. # 41] is GRANTED as to Count One of the amended complaint as it applies to the defendant Town of Stratford.

### IV.  *Remaining State Law Claims*

The Court further declines to exercise supplemental jurisdiction over the plaintiffs' Connecticut state law claims on the ground that it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Spear v. Town of West Hartford,* 771 F.Supp. 521, 530 (D.Conn.1991) ("[A]bsent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendant state law claims on the basis of a federal question claim already disposed of ...."), *aff'd,* 954 F.2d 63 (2d Cir.), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992).

### V.  *Conclusion*

For the preceding reasons, the defendants' motions for summary judgment [Documents # 41 and 45] are GRANTED and the case is DISMISSED.

23. The relevant portions of § 1983 state that "Every person who ... subjects or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities." 42 U.S.C. § 1983.