Gerstenbluth v. Credit Suisse, et al.

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## FOR THE SECOND CIRCUIT

————————

August Term, 2012

(Argued: June 13, 2013      Decided: August 27, 2013)

Docket No. 12-4125-cv

————————

CHESTER GERSTENBLUTH,

*Plaintiff-Appellant*,

—v.—

CREDIT SUISSE SECURITIES (USA) LLC, INTERNAL REVENUE SERVICE,

*Defendants-Appellees*.

————————

B e f o r e:

POOLER, LOHIER, AND CARNEY, *Circuit Judge*s.

————————

Plaintiff-Appellant Chester Gerstenbluth, proceeding *pro se*, sued his former employer, Credit Suisse Securities (USA) LLC, and the Internal Revenue Service, seeking a refund of Federal Insurance Contribution Act taxes

withheld by the employer and collected by the IRS on a $250,000 settlement payment made by the employer to Gerstenbluth.  The parties do not dispute that Credit Suisse paid the sum principally in consideration of Gerstenbluth's agreement to withdraw his Age Discrimination in Employment Act complaint, which he filed after Credit Suisse terminated his longtime employment.  The District Court (Joanna Seybert, *Judge*) dismissed Gerstenbluth's complaint against Credit Suisse pursuant to Fed. R. Civ. P. 12(b)(6), and granted summary judgment to the Internal Revenue Service.  On appeal, Gerstenbluth contends principally that the District Court erred in concluding that the settlement payment constituted "wages" received "with respect to employment" under 26 U.S.C. § 3121, and was thus subject to FICA taxes.  We find no error.  The judgment of the District Court in favor of the Internal Revenue Service and Credit Suisse is AFFIRMED.

———————————

CHESTER GERSTENBLUTH, *pro se*, Plainview, N.Y.

STEPHEN M. KRAMARSKY (Angela L. Harris, *on the brief*), Dewey Pegno & Kramarsky LLP, New York, N.Y., *for Defendant-Appellee Credit Suisse Securities (USA) LLC.*

KENNETH W. ROSENBERG (Kathryn Keneally, Assistant Attorney General, Michael J. Haungs, Attorney, *on the brief*), Attorney, Tax Division, United States Department of Justice, Washington, D.C. (Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, N.Y., *of counsel*), *for Defendant-Appellee Internal Revenue Service.*

———————————

SUSAN L. CARNEY, *Circuit Judge*:

Plaintiff-Appellant Chester Gerstenbluth, appearing *pro se* on appeal as he did in the District Court, agreed to withdraw his complaint under the Age

2

Discrimination in Employment Act ("ADEA") against his former employer, Credit Suisse Securities (USA) LLC ("Credit Suisse"), in exchange for a lump sum payment of $250,000. The principal question on appeal is whether, under the Federal Insurance Contributions Act ("FICA"), these settlement proceeds are fairly characterized as "wages" received by Gerstenbluth "with respect to employment," and are thus subject to FICA taxes. See 26 U.S.C. § 3101(a); id. § 3101(b)(1); id. § 3121. We conclude that the proceeds are FICA wages. We therefore affirm the District Court's rejection of Gerstenbluth's refund claim and award of summary judgment to the Internal Revenue Service ("IRS"). We further affirm the District Court's dismissal of Gerstenbluth's refund claim against Credit Suisse.

## BACKGROUND

We draw the following narrative primarily from the statement of material facts submitted by the IRS in support of its motion for summary judgment, and from documents submitted as exhibits to that filing. Gerstenbluth has not disputed any of these factual assertions or the authenticity of the related exhibits.

After Credit Suisse terminated his employment with the company, Gerstenbluth filed a complaint with the United States Equal Employment

3

Opportunity Commission ("EEOC"), asserting that Credit Suisse discriminated against him on the basis of his age when it effected the termination.[1] Credit Suisse offered to settle, and in August 2009 the parties executed a related Settlement Agreement and Release ("Agreement" or "Settlement Agreement"). The Agreement provided that, in consideration of a payment to him of $250,000, "minus applicable taxes and deductions," Agreement ¶ 1, and subject to the EEOC's agreement to dismiss his charge, Gerstenbluth agreed to withdraw his EEOC complaint and to release all claims against Credit Suisse, id. ¶ 4. Under the Agreement, Credit Suisse expressly "retain[ed] the right to deduct and withhold from any payments to Gerstenbluth all sums that it may be required to withhold pursuant to applicable tax withholding laws or regulations." Id. ¶ 3. Aside from these generic phrases, however, the Agreement did not address the character of the $250,000 payment for purposes of federal income or employment taxation, or further describe the nature of the payment.[2]

---

[1] According to the Settlement Agreement, Gerstenbluth "dually filed" his EEOC complaint with the New York State Division of Human Rights. Agreement at 1. For simplicity, and in accordance with the parties' treatment of the two complaints as equivalent for present purposes, we focus only on the complaint submitted to the EEOC.

[2] The Settlement Agreement also contained Gerstenbluth's representation that "in return for his execution of th[e] Settlement Agreement, he will receive *compensation or benefits* beyond those to which he was already entitled before entering into th[e] . . .

4

Credit Suisse issued Gerstenbluth an IRS Form W-2, Wage and Tax Statement, for tax year 2009. On the Form W-2, the company included the settlement payment amount as part of Gerstenbluth's "[w]ages, tips, other comp[ensation]" and reported that it had withheld FICA taxes totaling $4,217.66 from the settlement sum.[3]

Gerstenbluth took issue with this characterization of the payment and disputed the company's withholding of FICA taxes. He unsuccessfully sought to recover the withheld FICA taxes from Credit Suisse and the IRS, to which (we presume) Credit Suisse had forwarded the withheld taxes. Having failed to obtain a refund through the prescribed administrative processes, Gerstenbluth filed suit in the United States District Court for the Eastern District of New York.

Credit Suisse moved to dismiss the complaint for failure to state a claim, and the IRS moved for summary judgment. The District Court (Joanna Seybert, *Judge*) granted both motions. With respect to Credit Suisse, the

Agreement." Agreement ¶ 5 (emphasis added). It does not appear that the parties intended "compensation" to mean that the settlement payment constituted "wages" for tax purposes.

[3] Because the Form W-2 for 2009 includes income Gerstenbluth received from Credit Suisse other than and in addition to the settlement payment, it also reflects FICA withholding in addition to the amount withheld in connection with the settlement. The IRS has not challenged Gerstenbluth's assertion that FICA withholding of $4,217.66 was associated with the settlement payment.

5

court dismissed the complaint on the ground that Gerstenbluth did "not have a private right of action under the U.S. tax laws." Gerstenbluth v. Credit Suisse Secs. (USA) LLC, No. 11-CV-2525, 2012 WL 4511632, at *2 (E.D.N.Y. Sept. 28, 2012). With respect to the IRS's motion, the court noted that "[m]oney paid to settle employment discrimination claims can be 'wages,' at least where the money represents back pay or front pay." Id. Emphasizing Credit Suisse's treatment of the award as "wages" on Form W-2 and the Settlement Agreement's provision that the award would be paid "minus applicable taxes and deductions," the court concluded that the payment "constituted 'wages' and was thus subject to FICA tax withholding." Id. (internal quotation marks omitted). Gerstenbluth was therefore not entitled to the claimed refund. Id. He timely appealed.[4]

---

[4] Although his notice of appeal named Credit Suisse as well as the IRS, Gerstenbluth does not mention the substance of the District Court's ruling for Credit Suisse in his brief on appeal except obliquely and in passing. Accordingly, notwithstanding the latitude we traditionally accord *pro se* litigants, we find that he has waived any challenge to this aspect of the District Court's judgment. See Cancel v. Home Depot, 488 F. App'x 520, 520 n.1 (2d Cir. 2012) (summary order) ("[E]ven making due allowance for his *pro se* status, [appellant] has waived those claims." (citation omitted)). But even if we overlooked the waiver—and concluded that FICA affords him a private right of action—Gerstenbluth would have no basis for recovery against Credit Suisse in light of our conclusion that the settlement payment was subject to FICA taxes.

## DISCUSSION

Because Gerstenbluth proceeded *pro se* both in the District Court and on appeal, "we read his papers liberally and interpret them to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (internal quotation marks omitted). We review *de novo* the District Court's grant of summary judgment in favor of the IRS, drawing in Gerstenbluth's favor all factual inferences grounded in the record. See Steel Inst. of N.Y. v. City of New York, 716 F.3d 31, 33 (2d Cir. 2013). "Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. (internal quotation marks omitted). Because no relevant facts are disputed in this case, we focus on whether the settlement proceeds constitute "wages" under 26 U.S.C. § 3121(a), a mixed question of law and fact that we review *de novo*. See Roberts v. Royal Atl. Corp., 542 F.3d 363, 367 (2d Cir. 2008).

### 1. The Tax Treatment of Settlement Awards

As is familiar to most taxpaying wage-earners, the FICA tax consists of two components: a tax to fund "[o]ld age, survivors, and disability insurance" (commonly known as Social Security) and a tax to fund "hospital insurance," (commonly known as Medicare). 26 U.S.C. § 3101(a); id. § 3101(b)(1); see

7

United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 205 (2001). Both components of the tax are imposed only on "wages" received by a taxpayer "with respect to employment." 26 U.S.C. § 3101(a); id. § 3101(b)(1). The Code defines "wages" for this purpose as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash."[5] Id. § 3121(a). The definition of wages has been broadly construed: "Remuneration for employment . . . constitutes wages even though at the time paid the relationship of employer and employee no longer exists between the person in whose employ the services were performed and the individual who performed them." Treas. Reg. § 31.3121(a)-1(i). FICA places an obligation on the employer to collect the related taxes and transmit them to the government. 26 U.S.C. § 3102(a).

Gerstenbluth freely acknowledges that a settlement payment of back or front pay would be wages subject to FICA taxes.[6] He contends, however, that the settlement payment he received is neither front pay nor back pay nor any

---

[5] The Code also sets out a number of exceptions to this definition of wages, none of which is relevant here. See 26 U.S.C. § 3121(a).

[6] Back pay consists of wages lost between the plaintiff's wrongful termination and the entry of the court's judgment. See Banks v. Travelers Cos., 180 F.3d 358, 364 (2d Cir. 1999). Front pay is wages lost between judgment and the plaintiff's reinstatement, or, if reinstatement is not feasible, it is a reasonable award "of future lost earnings." Id. (internal quotation marks omitted).

8

form of "wages." Rather, he characterizes the sum as something different: a "payment to drop the Appellant's complaint of Age Discrimination against Credit Suisse." Appellant's Br. at 7. In support of his view, he asserts that he had already received a "significant severance package"; at no time during settlement negotiations "was there any mention of back or forward pay"; the settlement amount "was not in any way linked" to his "former salary or length of tenure"; and Credit Suisse did not treat the payment as triggering related pension plan contributions. Id. at 9-10. He also points to IRS Publication 4345, id. at 8, which in its one-page 2010 format advised that a settlement for "unlawful discrimination" "should be reported as 'Other Income'" on IRS Form 1040, the United States Individual Tax Return.[7] Supplemental App. ("Supp. App.") 13. Although his position may have some initial plausibility, Gerstenbluth oversimplifies the correct inquiry, and his argument is ultimately unpersuasive.

To determine the correct tax treatment of a settlement payment, we look first at the nature of the claim that led to the settlement, together with the remedies available under the law on which the claim giving rise to the settlement is based, to ascertain what the payment fairly represents. Stated

---

[7] Publication 4345 has since changed. Compare Supplemental App. 13, with I.R.S. Publication 4345 (Revised Nov. 2011), available at http://www.irs.gov/pub/irs-pdf/p4345.pdf.

differently, in seeking to classify a settlement payment or damages award for tax purposes, we ask, "In lieu of *what* were the damages awarded?" Milenbach v. Comm'r, 318 F.3d 924, 932 (9th Cir. 2003) (emphasis added and internal quotation marks omitted); accord Espinoza v. Comm'r, 636 F.3d 747, 750 (5th Cir. 2011); Francisco v. United States, 267 F.3d 303, 319 (3d Cir. 2001); Delaney v. Comm'r, 99 F.3d 20, 23-24 (1st Cir. 1996).

This approach finds support in precedent from both the Supreme Court and our Court. In United States v. Burke, 504 U.S. 229 (1992), superseded by statute on other grounds, Small Business Job Protection Act of 1996, Pub. L. 104-188, § 1605, 110 Stat. 1755, 1838 (codified at 26 U.S.C. § 104(a)(2)), for example, the Supreme Court addressed whether a settlement payment to end a Title VII gender discrimination claim constituted damages for "personal injuries," which would have been exempt from the federal income tax at the time. Id. at 233-34. Because, under Title VII, the plaintiffs were entitled only to back pay and certain equitable relief, id. at 238, the Court concluded that the settlement amount was correctly treated as taxable gross income, and not as exempt payment for "personal injuries," id. at 242.[8] The Court's analysis

---

[8] The Court in Burke noted that the Code (at the time of its decision) also excluded from the federal income tax damages compensating individuals for "nonphysical injuries." 504 U.S. at 237 n.6. Congress later amended the Code to limit that exclusion to "personal *physical* injuries." See Small Business Job Protection Act of 1996 § 1605 (emphasis added).

10

"focused . . . on the nature of the claim underlying respondents' damages award," and the appropriate tax treatment of the settlement turned on the type of injury that Title VII sought to redress.[9] Id. at 237. And in Noel v. N.Y. State Office of Mental Health Central N.Y. Psychiatric Ctr., 697 F.3d 209 (2d Cir. 2012), we recently found—based on a similar examination of statutory remedies available under Title VII—that a plaintiff's jury award of front and back pay constituted "wages" subject to FICA taxes. Id. at 213-14.

In addition, we may examine the intentions of *both* parties to the settlement, and in particular the purpose of the payor, as reflected in any written settlement agreement or other evidence. When the parties have not expressly designated the nature of the settlement amount or allocated it among various taxable and tax-exempt components, our decision in Agar v. Commissioner, 290 F.2d 283 (2d Cir. 1961) (per curiam), provides guidance. At issue there was whether a settlement payment to an employee, made after he resigned and threatened to sue for slander, represented compensation for personal injuries (not taxable) or severance pay (taxable). The parties'

The amendment casts no doubt on the validity of the Court's approach in Burke.

[9] We recognize that the Court in Burke considered whether a settlement payment was "gross income" under 26 U.S.C. § 61, not "wages" under 26 U.S.C. § 3101. See Burke, 504 U.S. at 231 n.1. But the Court's reasoning there easily extends to the FICA context and undoubtedly mandates a more searching inquiry than what Gerstenbluth proposes.

agreement "did not clearly set forth the reason for the payments," and there was no single statutory basis for the claim. Id. at 284. Treating the taxpayer's stated belief about the purpose of the payment as "only evidence of the character of the payment," we instructed that "the ultimate inquiry is into the 'basic reason' for the company's payment." Id. The Tax Court was justified, we held, in relying principally on testimony by the company's president about the "basic reason" for the payment, and on that basis, we concluded, the settlement represented taxable severance pay.

Thus, the payor's intent bears importantly on the appropriate treatment of a settlement amount. Our sister Circuits, some relying on Agar, have reached similar conclusions. See Rivera v. Baker W., Inc., 430 F.3d 1253, 1257 (9th Cir. 2005) ("If the agreement lacks express language specifying the purpose of the compensation, we will then examine the intent of the payor."); Pipitone v. United States, 180 F.3d 859, 864 (7th Cir. 1999) ("When a settlement agreement lacks express language stating what the settlement amount was paid to settle, the most important factor for courts to consider is the intent of the payor."); Knuckles v. Comm'r, 349 F.2d 610, 613 (10th Cir. 1965) (concluding that, when determining the nature of a settlement payment, "[t]he most important fact . . . is the intent of the payor as to the purpose in

12

making the payment").

To be sure, without a negotiated tax classification stated in a settlement agreement and reflected in the settlement amount, the defendant—especially an employer or former employer—may have little incentive to treat a payment as anything other than FICA-taxable wages: an error in making a non-wage classification creates unnecessary and undesirable exposure for the employer in light of FICA's withholding requirements. And, after all, whether to accept the settlement terms or pursue formal legal process ultimately is for the claimant to determine. His view of the purpose of the payment, too, deserves some consideration in determining the correct characterization of the award. But precedent accords substantial weight to the discernible intentions of the payor. See Agar, 290 F.2d at 284.

### 2. The Nature of Gerstenbluth's Claims

The text of the Agreement, which highlights and specifies Gerstenbluth's obligation to withdraw the EEOC complaint, and the timing of the Agreement's negotiation and execution leave no doubt that the EEOC complaint animated the settlement. Not surprisingly, the Agreement also required Gerstenbluth to "release and waive all claims" against Credit Suisse, Agreement ¶ 4, but no party argues that Gerstenbluth had asserted anything

13

other than an age discrimination claim. We therefore consider the remedies potentially available to Gerstenbluth for his age discrimination claim to see what objectively-ascertainable exposure may have motivated Credit Suisse's payment. We then examine other indicia of the purpose of the payment.

## A. Remedies Available Under the ADEA

For a prevailing plaintiff, the ADEA provides for recovery of lost wages and, in the case of willful violations, liquidated damages, in addition to equitable relief.[10] See 29 U.S.C. § 626(b) (incorporating 29 U.S.C. § 216(b)); Comm'r v. Schleier, 515 U.S. 323, 325-26 (1995). Recoverable lost wages may consist of back pay or front pay. See Banks v. Travelers Cos., 180 F.3d 358, 364 (2d Cir. 1999). Additionally, the ADEA allows successful plaintiffs to recover prejudgment interest on their awards, see Sharkey v. Lasmo (AUL Ltd.), 214 F.3d 371, 375-76 (2d Cir. 2000), as well as costs and attorney's fees, see 29 U.S.C. § 626(b) (incorporating 29 U.S.C. § 216(b)); Porzig v. Dresdner, Kleinwort, Benson, North America LLC, 497 F.3d 133, 136 n.1 (2d Cir. 2007). The ADEA does not, however, permit recovery of damages compensating for pain and suffering or emotional distress. Schleier, 515 U.S. at 326. If it did,

---

[10] The ADEA does not refer directly to liquidated damages; instead, it incorporates the remedy provision of the Fair Labor Standards Act, which provides for liquidated damages in an amount equal to "wages lost." See 29 U.S.C. § 626(b) (incorporating 29 U.S.C. § 216).

14

those components would likely not be "wages" for FICA purposes.  See 26

U.S.C. 3121(a) ("[T]he term 'wages' means all remuneration for

employment . . . .").

The IRS maintains that the entirety of Gerstenbluth's $250,000 award

constituted damages for front and back pay that would have been awardable

under the ADEA, and that, as in Noel, the settlement award is taxable in its

entirety.[11]

B.    Discerning the Intentions of Gerstenbluth and Credit Suisse

We next consider whether the parties either specified or contemplated

that the payment was in the nature of front and back pay, or some other type

of compensation.

The IRS may successfully challenge an implausible designation, of

course,[12] but parties may provide in their settlement agreement that certain

---

[11]  The IRS concedes that amounts awarded in lieu of attorney's fees and interest are not subject to FICA, but Gerstenbluth has not argued that any portion of the settlement payment was made in lieu of attorney's fees or interest.  Nor has Gerstenbluth asserted that any portion of the payment should be characterized as compensation for pain and suffering, a remedy available under New York's antidiscrimination law. See N.Y. Exec. Law § 297(4)(c); Freudenthal v. County of Nassau, 99 N.Y.2d 285, 291 (2003).  Accordingly, we decline to address these other possible characterizations of the payment.

[12]  We note, however, that it is the stated practice of the Tax Court to respect the parties' explicit allocation of damages as long as they entered into the settlement in good faith and at arms' length.  See, e.g., Bagley v. Comm'r, 105 T.C. 396, 406 (1995); see also 5 Mertens Law of Federal Income Taxation § 24A:10 (2013) ("Generally speaking, the Service or the courts will respect an allocation in a settlement agreement if the allocation is made in

15

portions of the settlement payment correspond to a particular type of damages claimed. See, e.g., Schleier, 515 U.S. at 326-27 (addressing the tax implications of an ADEA settlement that allocated half of the payment to "back pay" and half to "liquidated damages" and holding that neither type of damages was exempt from the personal income tax). When the settlement agreement explicitly allocates its payment amount to various components of a plaintiff's claim, a court reviewing the IRS's determination of its tax consequences may face a relatively straightforward inquiry.

When a settlement agreement does not explicitly characterize the nature of the payment, Agar requires us to emphasize the payor's intention in making the payment. The most readily available evidence of the payor's intent may be the payor's own treatment of the payment for taxation purposes. This is not to say that the payor's *post hoc* account of its intention in making the payment will be decisive. Although we presume the payor's characterization represents the true nature of the payment, a plaintiff may overcome this presumption by showing, for instance, that the payor's tax treatment of the payment or a component of the payment is inconsistent with the legal theories of the plaintiff's complaint, the legal remedies available to

good faith in an adversarial context.").

16

the plaintiff, or other facts surrounding the parties' settlement negotiations and agreement. Absent such a showing, however, the payor's treatment of the payment will often conclusively establish its intent, and may control the tax classification of the payment.

Here, the Agreement contemplated that Credit Suisse would withhold "applicable" taxes, and that the payment would be reduced by that amount. Agreement ¶¶ 1, 3. Credit Suisse issued Gerstenbluth a Form W-2 that classified the payment as "[w]ages, tips, other comp[ensation]," Supp. App. 25, in the context of a claim made under a statute that contemplates awards of back and front pay. Even acknowledging that the FICA-friendly classification may have been the path posing the least risk from a tax perspective for Credit Suisse, the designation nonetheless creates a strong presumption that the company made the payment in lieu of lost wages and that the payment is therefore taxable under FICA.

As noted above, Gerstenbluth proposes several arguments for overcoming the presumption in favor of the accuracy of Credit Suisse's classification. None is availing.

First, Gerstenbluth asserts that the IRS's position in this action is inconsistent with one of its taxpayer-oriented publications. The publication at

issue, Publication 4345, is aimed at giving taxpayers general advice on the appropriate tax treatment of settlement proceeds. In its then-current form, the publication instructed: "Lost wages, lost profits, unlawful discrimination, or injury to reputation: Amounts are taxable and should be reported as 'Other Income' on line 21 of Form 1040." Supp. App. 13. We understand Gerstenbluth to be arguing that because the IRS did not instruct taxpayers to list those amounts on the line in Form 1040 that corresponds to "[w]ages, salaries, tips, etc.," see id. at 26 (Gerstenbluth's Form 1040), the IRS has in effect conceded that such payments, while reportable income, are not "wages" subject to the FICA tax.

This informal advice hardly amounts to a concession as to the appropriate treatment for FICA purposes. IRS publications do not displace controlling statutes, regulations, and case law. Thus, in United States v. Josephberg, 562 F.3d 478 (2d Cir. 2009), we affirmed the district court's refusal in a tax evasion case to give a jury instruction based on an IRS publication, explaining that "IRS publications, though aimed at explaining existing tax law to taxpayers, do not have the force of law." Id. at 498 (internal quotation marks omitted); see also Zimmerman v. Comm'r, 71 T.C. 367, 371 (1978) ("[T]he authoritative sources of Federal tax law are in the

18

statutes, regulations, and judicial decisions and not in such informal publications."), aff'd without opinion, 614 F.2d 1294 (2d Cir. 1979); Miller v. Comm'r, 114 T.C. 184, 195 (2000) (same). Our decision in Noel made clear that front and back pay awards, at least those made under Title VII, are subject to FICA taxes, and Gerstenbluth's brief recognizes as much. See Appellant's Br. at 7 ("Appellant acknowledges that back or forward pay is taxed for FICA and Medicare purposes."). To the extent the IRS publication is inconsistent with our conclusion in Noel, the publication misstates the law.

Next, Gerstenbluth asserts that the settlement payment cannot fairly be said to represent lost wages because the amount paid was not calculated (he now asserts) based on the amount of his salary or the length of his tenure at Credit Suisse. To be sure, a calculation set out in the Settlement Agreement and demonstrating that the payment amount was linked to the employee's salary would serve as persuasive additional evidence that the parties intended the award to represent lost wages. Cf. Abrahamsen v. United States, 44 Fed. Cl. 260, 272 (1999) (concluding that payments made in connection with employer's "downsizing" constituted wages, where the employer "calculated the payments solely on the basis of employment tenure and salary basis"), aff'd, 228 F.3d 1360 (Fed. Cir. 2000). But Credit Suisse

19

was under no obligation to detail in the Agreement how it computed the $250,000 figure, and its silence about the basis for its calculation does not negate the import of the tax treatment it afforded the settlement payment.

In addition, Gerstenbluth argues that the settlement cannot constitute front or back pay, because, if it did, the Agreement would violate EEOC regulations governing waivers of ADEA claims. He cites to 29 C.F.R. § 1625.22(i)(2), which provides: "No waiver agreement may include any provision prohibiting any individual from: (i) Filing a charge or complaint, including a challenge to the validity of the waiver agreement, with EEOC, or (ii) Participating in any investigation or proceeding conducted by EEOC."

We see no merit in this contention. Even were we to assume, arguendo, that the settlement agreement in some way violated this regulation, that violation would have no bearing on the proper characterization of the settlement payment for FICA purposes. Whether Gerstenbluth waived a right that the regulations treat as unwaivable is a query independent of whether the settlement payment reflects front pay, back pay, or some other type of damages.

Finally, Gerstenbluth asserts in his brief on appeal that upon termination, he received a severance package from Credit Suisse,

20

unassociated with his later-filed EEOC complaint, and that his severance payment was explicitly tied to the amount of his former salary. He implies that, since he had already received a payment in lieu of front pay, the settlement amount was neither back nor front pay. No record evidence supports his assertion about a prior severance payment, however, and, notwithstanding our usual liberality in construing the pleadings of *pro se* litigants, we cannot simply transform his unsupported assertion into an established fact for purposes of his appeal. Even were we to accept this assertion, however, the existence of such a prior payment would not alter our analysis: had Gerstenbluth prevailed before the EEOC, he still would have been entitled to receive primarily back and front pay. The severance payment, without more, would not likely transform the settlement payment into something other than "wages."[13]

---

[13] In a sense, of course, *every* settlement payment is made (as Gerstenbluth argues his was) to induce a claimant to drop a claim: a defendant or possible defendant determines that paying the claimant or plaintiff to withdraw his claims outweighs the costs and risks of further proceedings, sometimes including a trial. And sometimes it may not be advantageous to the parties to identify with any precision the components of a settlement amount. But especially where the defendant is an employer or former employer, to exempt an ADEA settlement payment from FICA taxes (as Gerstenbluth urges), could create especially anomalous results. Two employees obtaining identical damage awards from their employers, one through settlement and the other after trial, could potentially suffer disparate tax consequences: the plaintiff who settles would not pay FICA taxes on the settlement amount—because ostensibly that award was merely a "payment to drop the claim"—whereas the plaintiff who prevails at trial would pay FICA taxes on the recovery. We can think of no justification for this asymmetrical treatment.

* * *

Credit Suisse classified the settlement payment as "[w]ages, tips, other comp[ensation]" on Gerstenbluth's Form W-2. Gerstenbluth has not offered sufficient evidence to suggest that the settlement payment was anything else.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the District Court granting the IRS summary judgment and dismissing the complaint against Credit Suisse.

22