VICTOR A. BOLDEN, UNITED STATES DISTRICT JUDGE
Michael Bell and Colleen Bell ("Plaintiffs"), married and living in Killingworth, Connecticut, filed this lawsuit against the United States of America, the United States Department of Treasury, and the Internal Revenue Service ("IRS") (collectively, "Defendants"), seeking the return of money withheld from their income taxes in 2008. Compl. 1, ECF No. 1. The Bells claim that Dr. Bell's former employer, Pfizer, submitted an incorrect IRS Form W-2, based in part on a settlement agreement reached between Dr. Bell and Pfizer, that resulted in overpayment of Dr. Bell's income tax that year, and they seek a refund of that money. Id. at 1-2. The Bells argue that the settlement agreement reached between Dr. Bell and Pfizer represented payment for a physical injury and therefore should have been tax-exempt under 26 U.S.C. 104(a)(2). Id. at 2.
*168 Defendants now move for summary judgment, arguing that Dr. Bell has not established that Pfizer's Form W-2 was incorrect-rather, the government argues, Pfizer appropriately withheld taxes from its settlement payment to Dr. Bell because that payment was taxable wages not subject to Section 104(a)(2). Def.'s Mot. Summ. J. 7-15, ECF No. 24.
For the reasons discussed below, Defendant's motion for summary judgment is GRANTED.
I. FACTUAL AND PROCEDURAL BACKGROUND
A. Factual Allegations
Michael Bell and Colleen Bell are married and have nine children. Opp. to Mot. Summ. J. 1, ECF No. 30. Declared legally blind in his left eye in 1995, Dr. Bell began to lose vision in his right eye in either 1998 or 1999. Def.'s Statement of Material Facts ("SMF") ¶¶ 2, 4.
In 2002, Dr. Bell began working in the information technology department at Pfizer. SMF ¶ 11. By that time, his vision problems were so severe that he struggled to read handwriting or distinguish details of photographs. Id. ¶ 5. In 2004 or 2005, Dr. Bell stopped driving because he could not see, and in 2005, he was declared legally blind in his right eye. Id. ¶¶ 6, 7.
Dr. Bell explained that several doctors had examined his eyes and had not conclusively diagnosed a reason for his blindness. Bell Deposition, SMF Ex. 4 at 38-40, ECF 24-4. Doctors have suggested that potential causes include intracranial hypertension, cone dystrophy, and end-stage glaucoma. Id. at 40. Dr. Bell also stated that he planned to visit a genetic specialist who "specializes in cone dystrophies and retinal type disorders because that's the only thing that might still explain why pressure, why tension, why stress, why intracranial pressure leads to this." Id. Dr. Bell asserts that stress causes or exacerbates his vision problems. Opp. to Mot. Summ. J. 3.
Dr. Bell describes a number of difficulties during his time working for Pfizer. Id. at 2. He claims that, when he was hired, a Pfizer employee told him his salary and that Pfizer would pay to move him from New Jersey to Connecticut. Id. He claims that, based on that representation, he decided to buy a house in Connecticut. Id. Allegedly, after he moved he was told that a large part of the money he had been given would need to be repaid. Id. Dr. Bell claims that he was irrevocably harmed by Pfizer because he would not have chosen to buy the home in Connecticut-which he could not afford-without the promise and payment of a large sum of money, and claims that the experience caused him much stress. Id. Defendants, on the other hand, claim that Dr. Bell was paid an erroneously high amount of money because of a clerical error and then was required to return the money that he never should have received. SMF ¶ 13.
Dr. Bell also claims that he endured a work environment where employees taunted and harassed him on account of his disability. Opp. to Mot. Summ. J. 3. Settlement negotiation conversations with Pfizer allegedly began when Dr. Bell reached out to Pfizer for compensation due to his physical injuries. Id. In 2007, Dr. Bell and Pfizer negotiated a settlement agreement: Pfizer agreed to pay Dr. Bell $190,000 in 2007 and $990,000 in 2008. SMF ¶ 22.
Defendants maintain that throughout negotiations with Dr. Bell about these payments, Pfizer repeatedly stated that Pfizer would treat the payments as wage income subject to taxes, and that the negotiated numbers represented amounts before withholding. Id. ¶¶ 19-22. The agreements do not specify the grounds for the payments, but do note that, with these payments, *169 Bell has been paid "in full any and all monies owed to him in connection with his employment with Pfizer and his termination from active service, including but not limited to payment for all services performed on behalf of the Company, except as otherwise specifically stated in this Supplemental Release Agreement." Def.'s Mot. Summ. J., Ex. 7 ¶ 2, ECF No. 24-10.
Dr. Bell, on the other hand, maintains that the payments were made on account of his (1) lost wages and (2) personal injury. Opp. to Mot. Summ. J. 3. He claims that the 2007 payment represented "lost wages" under a release agreement, and the 2008 payment was for a personal injury. Id. Bell argues that the "payment made [was] 'not ... for any wage or benefit' " and therefore was paid "for claims for personal injury." Id. at 4.
Pfizer paid Dr. Bell both amounts, and treated the payments as taxable wage income, withholding money for state and federal income tax and the Federal Insurance Contributions Act ("FICA") tax. SMF ¶¶ 33-37. In 2007, those taxes were: $47,500 in federal withholding, $2,755 in Federal MED/EE (Federal Medicare/Employer-Employee, i.e., the employee-paid portion of the Medicare Tax), and $9,500 in Connecticut withholding. Id. ¶ 33. After taxes, Dr. Bell received $130,245. Id. In 2008, those taxes were: $252,840.15 in Federal W/H, $14,355.00 Federal Med/EE, and $49,500 in Connecticut W/H. Id. ¶ 35. After taxes, Dr. Bell received $673,304.85. Id.
The Bells submitted timely IRS Forms 1040X and 843, and included the IRS Form W-2 that Pfizer provided, despite allegedly doubting whether it was correct. Compl. 1-2.
The Bells seek a refund of the taxes paid in 2008, but not those paid in 2007.
B. Procedural History
The Bells filed this lawsuit on February 12, 2015, seeking a refund of payments under their timely filed IRS Form 1040X for the tax year ending December 31, 2008, plus interest to date; a refund of the employment tax payment under their timely filed IRS Form 843 for the tax year ending December 31, 2008, plus interest to date; and reasonable costs and fees, as permitted by 26 U.S.C. § 7430. Compl. 3. Defendants deny that the IRS collected an over-payment of taxes and demand a trial by jury. Answer 3-4, ECF No. 10.
In the Answer, Defendants admitted that the United States of America is the defendant to this action, but denied that the IRS is a defendant, explaining that the IRS cannot be sued and that the proper party in cases involving revenue issues is the United States. Answer 2.
This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1346, and 1340, and the parties agree that Plaintiffs have exhausted their administrative remedies. Compl. 2; Answer 3.
Defendants move for summary judgment, asserting that Dr. Bell is not entitled to a refund of the taxes that Pfizer withheld. Def.'s Mot. Summ. J. 4.
II. STANDARD OF REVIEW
The Court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial.
*170 Id. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
The Court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. Dufort v. City of New York , 874 F.3d 338, 343 (2d Cir. 2017). The Court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials. Brown v. Eli Lilly & Co. , 654 F.3d 347, 358 (2d Cir. 2011).
III. DISCUSSION
Federal income tax is calculated based on a person's gross income, "all income from whatever source derived." 26 U.S.C. § 61(a). "The broad sweep of this provision demonstrates that Congress intended 'to use the full measure of its taxing power.' " Duffy v. United States , 120 Fed.Cl. 55, 63 (Fed. Cl. 2015) (quoting Helvering v. Clifford , 309 U.S. 331, 334, 60 S.Ct. 554, 84 L.Ed. 788 (1940) (citation omitted) ). Courts construe this provision liberally to include all income except money specifically excluded in the tax code, and settlement agreements are normally subject to income tax unless the money falls into one of the narrow exceptions to Section 61(a). Comm'r of Internal Revenue v. Schleier , 515 U.S. 323, 328, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) ; United States v. Burke , 504 U.S. 229, 233, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992).
The FICA tax funds Social Security and Medicare. 26 U.S.C. §§ 3101(a), 3101(b)(1) ; see Gerstenbluth v. Credit Suisse Securities (USA) LLC , 728 F.3d 139, 143 (2d Cir. 2013). FICA taxes only wages received by a taxpayer with respect to employment. 26 U.S.C. §§ 3101(a) - (b), 3111(a) - (b). Wages under FICA are construed broadly as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash." Id. § 3121(a); United States v. Quality Stores, Inc. , --- U.S. ----, 134 S.Ct. 1395, 1399, 188 L.Ed.2d 413 (2014). Remuneration for employment includes wages paid even after the employee is no longer employed with the employer. Treas. Reg. § 31.3121(a)-1 ; Gerstenbluth , 728 F.3d at 143.
The Bells argue that Pfizer's payments under the Supplemental Release Agreement should be excluded from their gross income in tax year 2008, and from their FICA tax in 2008, under 26 U.S.C. § 104(a)(2). The Court disagrees.
A party claiming an exception from the gross income tax has the burden of establishing that the exception applies. Duffy , 120 Fed.Cl. at 63. Whether a specific settlement agreement falls into one of the exceptions for taxable wages under FICA calls for the same standard as whether a settlement agreement is excluded from gross income. Gerstenbluth , 728 F.3d at 146-47. Therefore, if the Court concludes that the payments are not to be excluded from gross income in tax year 2008, the same holds true for the FICA tax for that tax year.
Generally, severance payments constitute wages for which employers are required to withhold taxes. Quality Stores , 134 S.Ct. at 1400-01 ("Severance payments are made in consideration for employment-for a 'service ... performed' by 'an employee for the person employing him,' per FICA's definition of the term 'employment.' " (quoting 26 U.S.C. § 3121(b) ) ). There is an exception for taxable wages *171 under 26 U.S.C. § 104(a)(2), which provides in pertinent part:
(a) In general.-Except in the case of amounts attributable to (and in excess of) deductions allowed under Section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include ...
(2) The amount of any damages (other than punitive damages) received (whether by suit or agreement and whether the lump sums or as periodic payments) on account of personal physical injuries or physical sickness.
To claim an exception under Section 104(a)(2), a taxpayer must show that: "(1) the underlying cause of action giving rise to the recovery was 'based upon tort type rights'; and (2) the damages were received 'on account of personal injuries or [physical] sickness.' " Abrahamsen v. United States , 228 F.3d 1360, 1363 (Fed. Cir. 2000). The Bells cannot satisfy either prong of this test.
First, the "underlying cause of action giving rise to the recovery" is the resolution of any and all issues relating to Dr. Bell's employment, not "tort type rights." See id. Parties may explicitly state in an agreement that a settlement payment represents payment for a particular type of damages. See Gerstenbluth , 728 F.3d at 146 (citing Schleier , 515 U.S. at 326-27, 115 S.Ct. 2159 (considering settlement that allocated some money for back pay and other money for damages and finding all settlement money eligible for personal income tax) ). If the parties do not explicitly link payment with a type of damages, the Court must discern the "payor's intention in making the payment." Id. at 147 ; see also Agar , 290 F.2d at 284 (finding a settlement agreement subject to income tax and stating, "[t]hough petitioner may have believed that the company paid him to avoid litigation, the Tax Court properly held that his belief was only evidence of the character of the payment; the ultimate inquiry is into the 'basic reason' for the company's payment").
Here, the "payor's intention in making the payment," Gerstenbluth , 728 F.3d at 146, can be determined by a review of the Supplemental Release Agreement: to release Pfizer from any liability related to Dr. Bell's employment with Pfizer and the termination of that employment. See, e.g. , Def.'s Mot. Summ. J., Ex. 7 ¶ 2 ("Bell further agrees and acknowledges that, upon Pfizer's payment to him of the amount set forth therein, Pfizer has paid him in full any and all monies owed to him in connection with his employment with Pfizer and his termination from active service ..."); id. ¶ 4 (Dr. Bell "agrees and covenants not to file any suit, complaint, charge, claim, grievance or demand for arbitration against the Company in any court, administrative agency, commission or other forum with regard to any claim, demand, liability or obligation arising out of his employment with Pfizer or his termination from active service"). Pfizer General Counsel Margaret Madden's declaration, submitted on behalf of Pfizer on the purpose of the settlement agreement, is consistent with the Supplemental Release Agreement's express language. Madden Decl., Def.'s Mot. Summ. J., Ex. 2 ¶ 3 (stating that, as part of her job responsibilities at Pfizer, she negotiated a severance agreement with Dr. Bell "with respect to his [ ] demand for financial compensation from Pfizer on account of various claims arising from his employment with Pfizer, including a claim of discrimination on account of his disability"); id. ¶ 8 (agreement made so that "Bell, among other things, [would release] any and all claims arising out of his employment with Pfizer").
Dr. Bell argues that, since he would have brought claims of intentional infliction *172 of emotional distress and negligent infliction of emotional distress, both torts cognizable under Connecticut law, and since these specific claims are covered by the Supplemental Release Agreement, "the underlying cause of action giving rise to the recovery was 'based upon tort type rights.' " The Court disagrees.
In Agar , a case decided by the Second Circuit in 1961, a taxpayer argued that a settlement represented payment for a libel claim. 290 F.2d 283 (2d Cir. 1961). The tax court rejected that argument, and the Second Circuit affirmed, recognizing "that the payments were in the nature of severance pay or extra compensation and not in settlement of a possible tort claim," relying on the company president's testimony that these were severance payments. Id. at 284.
In Gerstenbluth , a more recent Second Circuit decision from 2013, the court determined that, "in seeking to classify a settlement payment or damages award for tax purposes, we ask, "In lieu of what were the damages awarded?" 728 F.3d at 144. There, a taxpayer argued that payments made under terms of a settlement agreement and release for the withdrawal of a complaint with the Equal Employment Opportunity Commission ("EEOC") did not constitute wages; "since he had already received a payment in lieu of front pay, the settlement amount was neither back nor front pay." Id. at 148. The Second Circuit rejected the argument, first noting that the settlement agreement's treatment of these payments as wages "creates a strong presumption that the company made the payment in lieu of lost wages and that the payment is therefore taxable under FICA." Id. at 147. The court then concluded that: "had Gerstenbluth prevailed before the EEOC, he still would have been entitled to receive primarily back and front pay. The severance payment, without more, would not likely transform the settlement payment into something other than wages." Id. at 148 (footnote omitted).
Here, Dr. Bell's own testimony is the only factual basis for arguing that "the underlying cause of action giving rise to the recovery was 'based upon tort type rights.' " See Abrahamsen , 228 F.3d at 1363. His testimony, however, to the extent that it conflicts with the plain language of the Supplemental Release Agreement-which states that the resolution of any and all employment issues, including anything surrounding the termination of Dr. Bell's employment with Pfizer is the basis for the payment-would be inadmissible at trial and, therefore, could not be relied upon by this Court as a basis for denying summary judgment. Spiegel v. Schulmann , 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that, 'in determining the appropriateness of a grant of summary judgment, [this court], like the district court in awarding summary judgment, may rely only on admissible evidence.' " (quoting Ehrens v. Lutheran Church , 385 F.3d 232, 235 (2d Cir. 2004) ) ); Leonetti v. MacDermid, Inc. , 310 Conn. 195, 211, 76 A.3d 168 (2013) ("[T]he parol evidence rule 'prohibits the use of extrinsic evidence to vary or contradict the terms of an integrated written contract.' " (quoting TIE Communications, Inc. v. Kopp , 218 Conn. 281, 287-88, 589 A.2d 329 (1991) ) ).
Dr. Bell also cannot satisfy the second prong of the exclusion test under 104(a)(2): that the damages were received "on account of personal injuries or physical sickness." As Dr. Bell admits, his only two alleged tort claims are intentional infliction of emotional distress and negligent infliction of emotional distress under Connecticut law. Both of these claims, as their labels rightly suggest, provide for recovery for emotional distress damages. See *173 Watts v. Chittenden , 301 Conn. 575, 586, 22 A.3d 1214 (2011) (explaining that to prevail on an intentional infliction of emotional distress claim, the plaintiff must show "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe" (quoting Appleton v. Bd. of Educ. , 254 Conn. 205, 210, 757 A.2d 1059 (2000) ) ); Larobina v. McDonald , 274 Conn. 394, 410, 876 A.2d 522 (2005) (explaining that to prevail on a negligent infliction of emotional distress claim, the plaintiff must show "that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm").
In 1996, however, Congress amended 26 U.S.C. § 104(a)(2) to add the word "physical" to the phrase "personal injuries or sickness." Stadnyk v. Comm'r of Internal Revenue , 367 Fed.Appx. 586, 591 (6th Cir. 2010) (citing the Small Business Job Protection Act of 1996, Pub. L. No. 104-188 § 1605(a), 110 Stat. 1755, 1838). As a result, this statutory provision now "expressly states that emotional distress does not constitute a physical injury or sickness." Id. (citing Pub. L. No. 104-188, § 1605(a), 110 Stat. 1755, 1838). Thus, regardless of whether Dr. Bell can plausibly claim that the Supplemental Release Agreement provided a recovery for "tort type rights,"-and this Court holds he cannot-his claims for recovery under emotional distress damages theories have been foreclosed by Congress and therefore could not possibly be excluded from his gross income.
At oral argument, counsel for Dr. Bell claimed that he sought recovery not for emotional distress under these two legal theories, but instead relief from the physical injuries resulting from emotional distress. This argument misses the mark. As the Connecticut Supreme Court has recognized, with respect to an intentional infliction of emotional distress claim,"[i]t is the intent to cause injury that is the gravamen of the tort." DeLaurentis v. New Haven , 220 Conn. 225, 267, 597 A.2d 807 (1991) (quoting Hustler Magazine v. Falwell , 485 U.S. 46, 53, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) ); see also Miner v. Town of Cheshire , 126 F.Supp.2d 184, 195 (D. Conn. 2000) (same). For a negligent infliction of emotional distress claim, the critical issue is the "unreasonable conduct in the manner in which the employer carried out an employment action." Miner , 126 F.Supp.2d at 197 (citations omitted). In short, Dr. Bell's two alleged legal claims of emotional distress, for intentional and negligent infliction respectively, should be seen for what they are: alleged claims to recover for injuries on account of emotional distress, not "on account of personal injuries or physical sickness." Thus, these claims, even if they were not related to the resolution of employment claims, would not exempt the payments made under the Supplemental Release Agreement from inclusion in Dr. Bell's gross income in 2008.
As suggested above, for the same reasons that the payments made under the Supplemental Release Agreement should not be excluded from Dr. Bell's gross income in 2008, Dr. Bell also properly paid FICA taxes on that income in that year. FICA taxes wages, which are broadly construed as "[r]emuneration for employment" regardless of whether the employment relationship still exists. Treas. Reg. § 31.3121(a)-1(i) ;
*174 Mayo Foundation for Medical Ed. And Research v. United States , 562 U.S. 44, 131 S.Ct. 704, 709, 178 L.Ed.2d 588 (2011) ; Gerstenbluth , 728 F.3d at 143.
The settlement agreement at issue here was remuneration for Dr. Bell's employment at Pfizer because it was intrinsically related to his work there; all of his claims derive from his relationships with his employer and co-workers, and the settlement makes clear that it represents payment for "any and all monies owed to him in connection with his employment with Pfizer and his termination from active service." Def.'s Mot. Summ. J., Ex. 7 ¶ 2, ECF No. 24-10. In Quality Stores , the Supreme Court stated:
Severance payments are, of course, "remuneration," and common sense dictates that employees receive the payments "for employment." Severance payments are made to employees only. It would be contrary to common usage to describe as a severance payment remuneration provided to someone who has not worked for the employer. Severance payments are made in consideration for employment-for a "service ... performed" by "an employee for the person employing him" per FICA's definition of the term "employment."
134 S.Ct. at 1399-400 (citations omitted). The same "common sense" tells us that Dr. Bell's contract, which was paid to him "in connection with his employment" and termination from Pfizer, was remuneration from employment. Whether it is called a settlement agreement or a severance agreement, a contract like Dr. Bell's would have been entered into with "employees only." The payment from that contract therefore is considered wages under FICA's broad definition of the term, and Pfizer properly withheld taxes before paying Dr. Bell.
IV. CONCLUSION
For all of the foregoing reasons, Defendant's motion for summary judgment is GRANTED.
The Court finds that the money paid to Dr. Bell was properly taxed as income under I.R.C. § 61(a) and taxed as wages under FICA. The settlement agreement represented payment related to Dr. Bell's employment with and termination from Pfizer, and it did not seek to compensate Dr. Bell for a physical injury. The payment therefore does not fall within the narrow exception to the income tax or FICA, § 104(a)(2). The government's motion for summary judgment on the basis that the Bells are not entitled to a refund of their 2008 taxes is GRANTED .
SO ORDERED at Bridgeport, Connecticut, this 22nd day of November, 2017.