Hansen v. Watkins Glen School District

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of October, two thousand twenty.

PRESENT:
> **ROSEMARY S. POOLER,**
> **RAYMOND J. LOHIER, JR.,**
> **WILLIAM J. NARDINI,**
> > *Circuit Judges.*

---

**Kristina Hansen,**

> *Plaintiff-Appellant*,

> v.

**Watkins Glen Central School District, Thomas Phillips, Individually and as Superintendent of the Watkins Glen Central School District,**

> *Defendants-Cross Claimants-*
> *Cross Defendants-Appellees*,

**Kramer Erich, individually and as employees or representatives of the Watkins Glen School District, Kai A. D'Alleva, individually and as employees or representatives of the Watkins Glen School District, Village of Watkins Glen, Village of Watkins Glen Police Department, Isaac Marmor, Jaime Coleman, Jordan Walrath, individually and as employees of the Village of Watkins Glen,**

**19-2530-cv**

*Defendants- Cross Claimants-*
*Cross Defendants*,

**John and Jane Does, Individually and as employees or representatives of the Watkins Glen School District,**

*Defendants-Cross Defendants*.

---

**FOR PLAINTIFF-APPELLANT:**                    Kristina Hansen, pro se,
                                                Hector, NY.

**FOR DEFENDANTS-CROSS CLAIMANTS-**             Patrick B. Naylon, Goldberg
**CROSS DEFENDANTS-APPELLEES:**                 Segalla, Rochester, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Geraci, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Appellant Kristina Hansen, proceeding pro se, appeals from the district court's judgment dismissing her 42 U.S.C. § 1983 claims against the Watkins Glen Central School District (the "District") and Thomas J. Phillips, the District Superintendent.   She principally claimed that her First Amendment and due process rights were violated when Phillips required her to obtain prior written permission to visit school property; that Phillips expanded the scope of the restriction in retaliation for her objection to this requirement; and that these violations occurred pursuant to a District custom or policy.   We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review a grant of summary judgment de novo, "resolv[ing] all ambiguities and

draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

## I.     Qualified Immunity

"Qualified immunity insulates public officials from claims for damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Defore v. Premore*, 86 F.3d 48, 50 (2d Cir. 1996) (internal quotation marks omitted). "[W]hen a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (internal quotation marks omitted) (alterations in original). Courts have discretion to decide the order in which they consider these questions. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Under the second prong, officials are "entitled to qualified immunity [when] their decision was reasonable, even if mistaken." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). Qualified immunity thus "protects all but the plainly incompetent or those who knowingly violate the law." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (internal quotation marks omitted). Qualified immunity is an affirmative defense; the

3

defendant bears the burden of proof. *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013).

### A.     First Amendment

A "non-public forum" is a space "which is neither traditionally open to public expression nor designated for such expression by the State." *Peck ex rel. Peck v. Baldwinsville Cent. Sch. Dist.*, 426 F.3d 617, 626 (2d Cir. 2005). A "limited public forum" is created when the government opens such a space to public expression "'but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects.'" *Id.* (quoting *Hotel Emps. & Rest. Emps. Union, Local 100 of New York, N.Y. & Vicinity, AFL CIO v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 545 (2d Cir. 2002)). The two events on school property where Hansen was arrested were limited public fora. *See Johnson*, 859 F.3d at 175 (holding that a school gymnasium was a limited public forum during athletic events); *Hotel Emps.*, 311 F.3d at 545 (listing school board meetings as an example of a limited public forum). In a limited public forum, the First Amendment permits the government to impose only reasonable, viewpoint-neutral regulations on speech. *Johnson,* 859 F.3d at 172.

Liberally construed, Hansen's brief argues that (1) the limitations on her access to school property were not reasonable because no reasonable person could have believed that she was attempting to evade the school's security procedures or that she otherwise presented a risk of disruption, and (2) in the absence of such a justification and because Phillips imputed a "negative" opinion of the school to her, a reasonable factfinder could conclude that the restrictions placed on her also were not viewpoint-neutral. Neither argument is availing.

The district court's grant of qualified immunity was premised on its conclusion that the parties did not dispute that the restriction "was a content-neutral response to her attempt to

4

circumvent the school's security protocol." This was accurate. In opposition to summary judgment, Hansen (who was then represented by counsel) did not identify any evidence that contradicted Phillips's testimony that he believed that Hansen was attempting to bypass the school's security policy when he confronted her on the morning of March 11, 2016. Hansen never argued that the initial restriction announced in the March 11 letter was viewpoint-based. We do not consider Hansen's argument, made for the first time on appeal, that the initial restriction was impermissibly viewpoint-based. *See Harrison v. Republic of Sudan*, 838 F.3d 86, 96 (2d Cir. 2016) ("It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." (internal quotation marks, alterations, and citations omitted)).

Absent a genuine dispute as to whether the restriction on Hansen's access to school property was viewpoint-based, Phillips is entitled to qualified immunity on Hansen's First Amendment claim because the evidence, even construed in Hansen's favor, established that a reasonable official could have believed that (1) Hansen was attempting to circumvent school security procedures and (2) the notification restriction was a reasonable and constitutional response to her actions.

First, the parties agree that Phillips saw Hansen park her car and then, more than ten minutes later, closely follow another person (who had key-card access to the building) to the entrance. Security footage showed that Hansen reached the building before the other person, and then waited for more than a minute to the side of the door before approaching it. Regardless of whether Hansen subjectively intended to evade the security protocol before speaking to Phillips, a reasonable person in Phillips's position could conclude from these facts that she did. Hansen then followed Phillips into the building's entryway after being told that she was being denied

5

permission to enter and refused to leave, violating the rules that she admitted she understood.

Second, it was not clearly established that a permission requirement was an unconstitutional response to a parent's attempt to evade a security restriction. We have previously considered First Amendment challenges to restrictions on parents' presence on school property. *See Johnson*, 859 F.3d at 175-76 ("[U]nless there is a clear and present danger of disruptions such as disorder, riot, obstruction of the event, or immediate threat to public safety, the school may regulate access to its gymnasium when it is being used as a limited public forum only if its restrictions are reasonable and viewpoint-neutral. . . . [T]he right not to be excluded, based on viewpoint differences or because of possible annoyance, from sports events to which the public was invited was clearly established."). Based on our precedent, including our conclusions about the contours of parents' clearly established First Amendment rights at the time of the underlying events, a reasonable superintendent in Phillips' position could have concluded that a parent can lawfully be restricted from school activities based on a risk of disruption or safety concerns as long as those concerns are not a pretext for viewpoint discrimination, and that a requirement that a parent receive prior permission to enter school property is a minor and reasonable response to such concerns. The cases cited in Hansen's appellate brief are largely inapposite, and do not show that her right to be free from such a restriction was clearly established in 2016. And while Hansen argues that the restriction violated various state laws and District policy, these laws and policies are not coextensive with the First Amendment.[1]

---

[1] Hansen does not challenge the district court's ruling that state law violations are not a cognizable basis for a § 1983 claim, and she has thus abandoned this issue. *See LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995) ("[W]e need not manufacture claims of error for an appellant proceeding *pro se* . . . ."). We decline to consider Hansen's claim, raised for the first

6

**B.      Due Process**

In order to prevail on a procedural due process claim, a plaintiff must establish both "the existence of a property or liberty interest" and a "deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012).   Any interest a parent holds in attending school board meetings without providing prior notice is de minimis and therefore insufficient to sustain a due process claim, especially in light of officials' legitimate concern that the parent presents a safety risk.   *See Buthy v. Comm'r of Off. of Mental Health of N.Y. State*, 818 F.2d 1046, 1050 (2d Cir. 1987) ("[S]ome restrictions on individual liberty rise only to a *de minimis* level of imposition with which the Constitution is not concerned," and "[s]uch restrictions may survive constitutional scrutiny even absent any express showing that they are reasonably related to a legitimate state interest.") (internal citations and quotation marks omitted).   Thus, a reasonable superintendent could have concluded that the restriction placed on Hansen did not violate her due process rights, particularly after finding that she presented a security risk.[2]

---

time on appeal, that Phillips submitted a false statement to law enforcement in violation of Section 210.45 of N.Y. Penal Law.   *See Harrison*, 838 F.3d at 96.

[2] In her statement of issues, Hansen identifies as an issue "[w]hether the lower court erred in concluding Ms. Hansen abandoned her right to her claim of due process violation."   However, she does not address this issue further in her brief, and has therefore waived it.   *See Gerstenbluth v. Credit Suisse Sec. (USA) LLC*, 728 F.3d 139, 142 n.4 (2d Cir. 2013) (pro se litigant "waived any challenge" to a ruling mentioned only "obliquely and in passing" in appellate brief); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").   In any event, to the extent that Hansen's claims related to unreasonable searches and seizures and/or arrests without probable cause were distinct from the due process claims that the district court addressed, the district court did not err in finding that Hansen failed to address these claims in her submissions in opposition to summary judgment.

## II.    First Amendment Retaliation

Hansen's First Amendment retaliation claim was premised on her allegation that Phillips expanded the scope of the restriction against her in a March 14, 2016 email in response to her objection to being subjected to a restriction.   To state a First Amendment retaliation claim, "a plaintiff must show that: (1) [s]he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [the plaintiff's] exercise of that right; and (3) the defendant's actions caused [the plaintiff] some injury."   *Ragbir v. Homan*, 923 F.3d 53, 66 (2d Cir. 2019) (internal citations and quotation marks omitted).   The district court found that Hansen failed to establish a genuine issue of fact with respect to the second and third prongs of this test: there was insufficient evidence for a reasonable factfinder to find that the email expanded the scope of the restriction (i.e. caused any injury) or that Phillips wrote the email with a retaliatory motive.   On appeal, Hansen has abandoned her claim that the March 14 email expanded the scope of the restriction announced in the March 11 letter by failing to address it in her brief.   *See LoSacco*, 71 F.3d at 93.   Because the existence of an action that caused injury is dispositive, we affirm the district court's grant of summary judgment on Hansen's First Amendment retaliation claim.   *See Ragbir*, 923 F.3d at 66.

## III.    Municipal Liability

Finally, Hansen alleged that the District was liable for the alleged violations of her constitutional rights because it maintained a custom or policy of permitting Phillips to make unilateral decisions regarding the enforcement of the District visitor's policy, in contravention of the written policy placing this authority with school principals.   To establish liability against the District under 42 U.S.C. § 1983, Hansen was required to show that an official custom or policy

caused a violation of her constitutional rights. *See Monell v. Dep't of Social Services of the City of N.Y.*, 436 U.S. 658, 694 (1978). Here, the district court properly concluded that the cited custom did not cause a deprivation of Hansen's rights—a custom of delegating authority to enforce the District visitor's policy to the Superintendent does not establish the existence of a custom of permitting the Superintendent to exercise that authority unlawfully. And Hansen did not show the existence of a policy or custom of imposing unconstitutional restrictions on access to District property. An official custom or policy may be evidenced by "decisions of a government's lawmakers," "the acts of its policymaking officials," "practices so persistent and widespread as to practically have the force of law," and inaction "exhibit[ing] deliberate indifference to constitutional deprivations caused by subordinates." *Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (internal citations, quotation marks and emphasis omitted). As the district court found, Hansen specifically argued that Phillips was *not* a "policymaker" with respect to the District visitor's policy, because that authority lay with the Board. And Hansen did not show a custom or policy of imposing unconstitutional restrictions on access to District property: the record reflects that Phillips restricted access to school property on only four other occasions in the more than ten years he served as Superintendent, and there is no evidence that these other restrictions were not reasonable responses to legitimate safety concerns. *See Jones v. Town of E. Haven*, 691 F.3d 72, 85 (2d Cir. 2012) (holding that evidence of three instances "over a period of several years . . . fell far short" of establishing the existence of a policy or custom for *Monell* liability). Accordingly, the district court properly granted summary judgment to the District on Hansen's *Monell* claim.

We have considered all of Hansen's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court